UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NB, *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Case No. 10-1511 (RJL) |
| ) | |
| THE DISTRICT OF COLUMBIA, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION
(July 29, 2011) [#10]

Plaintiffs, five Medicaid recipients who reside in the District of Columbia, bring this action against the District of Columbia, Mayor Vincent Gray, and Julie Hudman, director of the Department of Health Care Finance ("DHCF,") (collectively "defendants"). Plaintiffs allege that when their prescription drug coverage was denied, terminated, reduced, or delayed, defendants failed to provide them, and other Medicaid recipients similarly situated, with adequate and timely notice, the opportunity for a fair hearing, and the opportunity for reinstated coverage pending a hearing decision. Plaintiffs, therefore, allege violations of the Due Process Clause of the Fifth Amendment of the Constitution, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396w-2, and District of Columbia law, D.C. Code § 4-201.01, *et seq.* Plaintiffs seek a declaratory judgment and injunctive relief under 42 U.S.C. § 1983. Before this Court is defendants' Motion to Dismiss [#10]. Upon consideration of the parties' pleadings and relevant law, defendants' motion is GRANTED.

1

## BACKGROUND

In 1965, Congress enacted Title XIX of the Social Security Act, the Medical Assistance Program ("Medicaid"). Medicaid is a vendor payment program that reimburses certain approved providers for their services. 42 U.S.C. § 1396a(a)(32). The program is financed by both the federal and state governments and is administered by state agencies that are responsible for deciding eligibility, services provided, and all related procedures. 42 C.F.R. § 430.0. The agency must act in compliance with federal statutes and regulations. *Id.* Generally, pursuant to the federal Medicaid statute, if prescription drug coverage is terminated, suspended, or reduced, recipients are entitled to timely and adequate notice indicating the change in their drug coverage and to an opportunity for a hearing to contest the change. 42 U.S.C. § 1396a(a)(3); 42 C.F.R. § 435.919.

The District of Columbia administers its Medicaid program through DHCF. 42 U.S.C. § 1396a(a)(4)-(5). The District has established an electronic claims management system in order to facilitate the processing of Medicaid claims for prescription drugs. The system notifies a participating pharmacy with "real time eligibility verifications" of the Medicaid claims. 42 U.S.C. § 1396r-8(h).

Plaintiffs each receive Medicaid benefits in the District of Columbia. Compl. ¶¶ 5-9. Plaintiffs suffer from various disabilities including ear infections, diabetes, anxiety and behavioral disorders, asthma, food and environmental allergies, stomach problems, high blood pressure, gout and other discomforts. *Id.* ¶¶ 44-94. Plaintiffs allege that on

various occasions their prescription drug coverage was denied, terminated, reduced, or delayed *without* written notice or the opportunity for a hearing. *Id.*

## ANALYSIS

A complaint will be dismissed for lack of subject matter jurisdiction, Fed R. Civ. P. 12(b)(1), if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Richardson v. United States*, 193 F.3d 545, 549 (D.C. Cir. 1999) (internal quotations omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that a complaint shall be dismissed if plaintiff's factual allegations are insufficient to "raise a right to relief above the speculative level"). In order to survive a Rule 12(b)(1) motion, "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Lindsey v. United States*, 448 F. Supp. 2d 37, 42 (D.D.C. 2006) (quoting *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006)). Further, although a complaint must be "construed liberally in the plaintiffs' favor, and the court must grant plaintiffs the benefit of all inferences that can be derived from the facts alleged," *Kowal v. MCI Commc'n Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), the court need not accept as true "naked assertions devoid of further factual enhancement," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (internal quotations omitted), or "legal conclusions cast in the form of factual allegations," *Kowal*, 16 F.3d at 1276. Simply put, a pleading requires more than just "labels and conclusions." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

As such, a plaintiff must demonstrate that he has standing to bring his claim. *See* U.S. Const. art. III, § 2, cl. 1. A plaintiff's lack of standing is fatal to the court's jurisdiction over the claim. *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). To demonstrate standing, a plaintiff must, at a minimum, establish three elements: (1) plaintiff must have suffered an "injury in fact," an invasion of a legally protected interest; (2) there must be a causal connection between the defendants' actions and the alleged harm; and (3) the injury must be redressable—i.e., the court must be able to remedy the alleged injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A failure to satisfy any one of the three elements "suffices to defeat standing." *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).

In order to establish injury in fact, a plaintiff must show that there has been a violation of a legally cognizable interest, which is concrete, both qualitatively and temporally, and particularized, that is, the complaining party must be personally injured. *Lujan*, 504 U.S. at 560; *Whitmore v. Kansas*, 495 U.S. 149, 155 (1990).[1] In particular, the injury must be either actual or imminent and must not be based upon conjecture or hypotheticals. *Lujan*, 504 U.S. at 564. Thus, where there is no actual harm, imminence – a "high degree of immediacy" – must be established. *Id.* at 564 n.2. Imminence ensures that the injury is not overly speculative. *Id.* While, imminence is more of an "elastic concept" than actual harm, it "cannot be stretched beyond its purpose," ensuring that the

---

[1] An "identifiable trifle" can amount to injury in fact. *See United States v. SCRAP*, 412 U.S. 669, 689 n.14 (1973). Therefore, the harm does not have to be large; it must only satisfy the minimum constitutional requirements. *Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 937 (D.D.C. 1986).

4

injury is "certainly impending." *Id.* Thus, the injury cannot occur at "some indefinite time in the future." *Id.*

In addition, our Circuit Court has held that "general emotional 'harm,' no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes." *Humane Soc'y v. Babbitt*, 46 F.3d 93, 98 (D.C. Cir. 1995). Similarly, other circuits have limited the circumstances in which injury may be the result of specific emotional harms, such as fear or anxiety. *See Central & South West Servs., Inc. v. E.P.A.*, 220 F.3d 683, 701 (5th Cir. 2000) (holding that "subjective fears" in a "speculative string of events" are not injury in fact); *Bronson v. Swensen*, 500 F.3d 1099, 1107 (10th Cir. 2007) (holding that a threat must be "real and immediate," as well as "objectively justified"); *Baker v. Prop. Investors of Conn.*, 338 F. Supp. 2d 321, 327 (D. Conn. 2004) (finding that anxiety and inconvenience do not constitute actual or imminent harm).

The injury in fact requirement ensures that a plaintiff has a "personal stake in the outcome of the controversy as to warrant . . . federal-court jurisdiction" and to justify a court-imposed remedy. *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (quotations omitted). This burden, therefore, must be met whether a plaintiff alleges a violation of a procedural right or a substantive right. *See Lujan*, 504 U.S. at 573 n.8.

In addition to establishing injury in fact, a plaintiff must also show causation. *Id.* at 560. Causation "examines whether it is substantially probable that the challenged acts of the defendant . . . will cause the particularized injury of the plaintiff." *Florida Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996). Thus, a plaintiff must show that the alleged injury is "fairly traceable to the challenged action of the defendant."

5

*Lujan*, 504 U.S. at 560 (quotations omitted). In particular, the injury cannot be "the result of the independent action of some third party not before the court." *Id.* Indeed, a plaintiff "must show that the [defendant's] action is more than only one of the many factors whose relative influence may affect the third parties' behavior." *Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 669 (D.C. Cir. 1987); *Tozzi v. H.H.S.*, 271 F.3d 301, 308 (D.C. Cir. 2001) (the defendant's actions must be a "substantial factor motivating the third parties' actions" against the plaintiff) (quoting *Creative Non-Violence*, 814 F.2d at 669). In other words, there is no causation when "the injury depends . . . on independent intervening or additional causal factors." *Fulani v. Brady*, 935 F.2d 1324, 1329 (D.C. Cir. 1991).

Finally, a plaintiff must allege facts showing that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rts. Org.*, 426 U.S. 26, 41-42 (1976)). "Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged . . . ." *Florida Audubon Soc'y*, 94 F.3d at 663-64. Simply put, the court must be able to remedy the alleged injury.

Here, plaintiffs have failed to establish any of the elements of standing. As an initial matter, in many of the instances alleged by plaintiffs, they were, in fact, ultimately able to obtain their prescriptions at no cost.[2] There was, therefore, no injury.

---

[2] For example, with respect to plaintiff NB, on one occasion, while NB's mother paid thirty-four dollars for NB's medication after being told by her pharmacy that NB was not

6

Unfortunately, the inconveniences experienced by plaintiffs and their families, attributable to either the delay in receiving prescriptions or their inability to obtain their prescriptions at particular pharmacies, do not rise to the level necessary to constitute injury in fact. *See Humane Soc'y*, 46 F.3d at 98; *Baker*, 338 F. Supp. 2d at 327. Likewise, the fear that plaintiff Doe *may* suffer an allergic reaction to a drug provided by a pharmacy cannot constitute injury. *See Bronson*, 500 F.3d at 1107. A such, Doe has failed to allege any facts that such a fear is either real or immediate. *See id.*

In addition, plaintiffs lack standing where their alleged injuries are not fairly traceable to the acts of the defendants. For instance, plaintiffs Wynn and Doe's allegations that because of prior authorization requirements, they were unable to obtain certain prescriptions, do not establish standing.[3] Any potential injury is not fairly traceable to defendants when a doctor, who is not a party to this action, failed to authorize the prescription. *See Fulani*, 935 F.2d at 1329.[4] Further, any fear or apprehension felt by

---

eligible for coverage, the pharmacy subsequently informed her that she was eligible and reimbursed her expenses. Compl. ¶ 47. Likewise, with respect to plaintiff Wynn, after a pharmacy told Wynn's father that a glucose monitor prescription would not be covered by Medicaid, he was, in fact, able to fill her prescription at a different pharmacy. Compl. ¶ 53. In addition, in the cases of plaintiffs Anderson and Rucker, their coverage was allegedly denied because of mistakes made by pharmacists and pharmacy computer malfunctions. Compl. ¶¶ 81-93. Notwithstanding these allegations, both plaintiffs ultimately received their medications. Compl. ¶¶ 81-93. In fact, plaintiff Rucker sought and received help from the District in resolving the pharmacy's mistake. Compl. ¶¶ 92-93.

[3] Similarly, where the pharmacy's actions were the direct cause of the potential injury, such as in the cases of Anderson and Rucker, there is no standing. *See Lujan*, 504 U.S. at 560.

[4] In fact, because of the prior authorization requirements, plaintiff Wynn was provided with an emergency supply of the older prescription by the Department of Mental Health Service Center, thus preventing any injury. Compl. ¶ 56. Wynn does not allege that the

plaintiff Doe, arising from the prior authorization requirements, does not constitute a cognizable injury under the law *and* is not fairly traceable to the defendants. *See Bronson*, 500 F.3d at 1107.[5]

Finally, while plaintiffs may have suffered a cognizable injury based on the various out-of-pocket expenses incurred after being denied coverage at the pharmacy,[6] they unfortunately have not established "the factual predicates of jurisdiction by a preponderance of the evidence." *See Lindsey*, 448 F. Supp. 2d at 42 (quoting *Erby*, 424 F. Supp. 2d at 182). Put simply, there are simply *no* facts, apart from conclusory statements, indicating that plaintiffs were in fact denied coverage by defendants. Indeed, in many of the instances alleged by plaintiffs, the "denial" of coverage was actually a mistake by the pharmacy or the electronic claims management system – not a decision by the District that failed to meet Medicaid's notice requirements.

Lastly, plaintiffs fail to show redressibilty. Indeed, plaintiffs merely seek injunctive and declaratory relief, not reimbursement for any expenses incurred. Compl.

---

older prescription, provided by the District as an emergency measure, harmed her in any way. *See* Compl. ¶ 56.

[5] For instance, the fact that plaintiff Doe suffers from the fear that he will run out of his medication is neither immediate nor fairly traceable to the actions of the defendants. Doe contends that he would be exposed to health risks due to delays resulting from the need for a doctor's authorization. Doe does not, however, allege any facts indicating that such a harm is immediate. Further, any potential immediacy depends fully on the actions of the doctor, in authorizing the prescription, and his own mother, in filling the prescription promptly. *See* Compl. ¶ 20.

[6] For instance, on one occasion, upon being informed that NB was ineligible for coverage, NB's mother was able to receive her medication from a different pharmacy, paying four dollars for a generic drug. Compl. ¶ 48. Likewise, plaintiff Doe claims that his mother incurred various out-of-pocket expenses due to alleged actions by defendants. *See, e.g.*, Compl. ¶ 73.

8

at 31. Thus, a favorable ruling by this Court would not "alleviate the particularized injury alleged." *See Florida Audubon Soc'y*, 94 F.3d at 663-64; *see also Lujan*, 504 U.S. at 561. As plaintiffs' injury cannot be remedied, this Court lacks jurisdiction over the claim.[7]

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's Motion to Dismiss [#10]. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[7] With respect to plaintiff Doe's asthma attack, the facts alleged are as follows: Plaintiff Doe was prescribed two inhalers, of which Medicaid permits a refill every twenty-five days. The pharmacy, however, reduced the quantity to one inhaler, presumably because of a reduction in Doe's Medicaid coverage. *See* Compl. ¶ 63. In early July 2009, Doe received *two* inhalers, one covered by Medicaid and one paid for by his mother. Compl. ¶ 63. In late July 2009, Doe suffered an asthma attack and did not have sufficient medication in his inhalers. Compl. ¶ 64. Doe's mother rushed to the pharmacy and again received *two* inhalers, one covered by Medicaid and one paid for by his mother. Compl. ¶ 64. Doe's asthma attack was simply not attributable to any potential reduction in Medicaid coverage from two inhalers to one. At the time of the attack, he was being provided with two inhalers, albeit one paid for by his mother. *See* Compl. ¶ 64. The only possible injury, therefore, would be her out-of-pocket payments. As explained above, however, Doe has failed to allege the essential facts necessary to show that such expenses were caused by defendants, and, moreover, such injury would not be redressed by a favorable ruling by this Court. *See Lujan*, 504 U.S. at 560.