# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

NB, *et al.*,                    )

                          )

        **Plaintiffs,**        )

                          )

          **v.**               )     **Civil Case No. 10-01511 (RJL)**

                          )

**THE DISTRICT OF COLUMBIA, *et al.*,**   )

                          )

        **Defendants.**      )

**FILED**

MAR 3 1 2014

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## <u>MEMORANDUM OPINION</u>
March 30, 2014 [## 10, 46]

    Nine Medicaid recipients ("plaintiffs") bring this suit against the District of Columbia, the Mayor of D.C., and the Director of D.C.'s Department of Health Care Finance (collectively, "defendants"), alleging that defendants denied Medicaid coverage of their prescription drugs without providing the procedural protections required by law. *See generally* Am. Compl. [Dkt. # 43]. In particular, plaintiffs allege that D.C. "denied, terminated, reduced, or delayed" their prescription drug coverage, and did so without giving them adequate written notice, the opportunity for a fair hearing, and the opportunity for reinstated coverage pending a hearing decision, in violation of federal and D.C. law. *See* Am. Compl. ¶¶ 1-2. Plaintiffs, therefore, allege violations of the Due Process Clause of the Fifth Amendment of the Constitution, Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, and District of Columbia law, D.C. Code § 4-201.01, *et seq.*, and they seek declaratory and injunctive relief under 42 U.S.C. § 1983. *See* Am. Compl. ¶¶ 181-195; *id.* at 49.

1

This Court previously granted defendants' Motion to Dismiss ("Defs.' First Mot.") [Dkt. # 10] on the ground that plaintiffs lacked standing, *see NB v. District of Columbia*, 800 F. Supp. 2d 51 (D.D.C. 2011), but plaintiffs successfully appealed that ruling, *see NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77 (D.C. Cir. 2012). Following remand from our Circuit Court, now pending before this Court are the remaining grounds in defendants' first Motion to Dismiss, as well as defendants' subsequent Motion to Dismiss, or, in the Alternative, for Summary Judgment ("Defs.' Second Mot.") [Dkt. # 46] and Memorandum of Points and Authorities in Support ("Defs.' Second Mem.") [Dkt. # 46-1]. Upon consideration of the pleadings and relevant law, defendants' Motions to Dismiss are GRANTED.

## BACKGROUND

### I. Medicaid Statutory and Regulatory Framework

Congress established the Medicaid program under Title XIX of the Social Security Act ("Grants to States for Medical Assistance Programs"), 42 U.S.C. § 1396 *et seq.* Medicaid is a "cooperative federal-state program that provides federal funding for state medical services to the poor." *Frew v. Hawkins*, 540 U.S. 431, 433 (2004). Rather than directly providing health care services to eligible individuals or providing them with funds to purchase health care, Medicaid typically functions as a provider payment program, wherein the program reimburses approved providers for their services. *See* 42 U.S.C. § 1396a(a)(32); Am. Compl. ¶ 21.

Medicaid is financed by both the federal and state governments and is administered by state agencies that are responsible for deciding eligibility, services

2

provided, and all related procedures. *See* 42 U.S.C. § 1396a(a)(2), (5); 42 C.F.R. § 430.0. In the District of Columbia, the Department of Health Care Finance ("DHCF") is the state agency responsible for administering D.C.'s Medicaid program. *See* 42 U.S.C. § 1396a(a)(5); 42 C.F.R. § 431.10; D.C. Code § 7-771.07(1).

States electing to participate in Medicaid must comply with requirements imposed by federal law, including procedural protections for Medicaid recipients. *NB ex rel. Peacock*, 682 F.3d at 80. As relevant in this case, the state must provide a Medicaid recipient with written notice of his right to a hearing "at the time" the state takes "any action affecting his . . . claim." 42 C.F.R. § 431.206(b), (c)(2). Such notice must contain a statement of what action the state intends to take, the reasons for that action, the specific regulations supporting the action, the individual's right to request a hearing, and an explanation of the circumstances under which coverage will be continued if a hearing is requested. 42 C.F.R. § 431.210. District of Columbia law imposes similar requirements. *See* D.C. Code § 4-205.55.[1]

D.C.'s Medicaid program includes coverage for prescription drugs: DHCF provides reimbursement to licensed, participating pharmacies for covered out-patient drugs dispensed to eligible Medicaid recipients. Am Compl. ¶ 32. As encouraged by the Medicaid statute and regulations, D.C. uses an electronic claims management ("ECM") system in order to facilitate the processing of Medicaid claims for prescription drug

---

[1] D.C. Code § 4-205.55(a) provides that the state "shall give timely and adequate notice in cases of intended action to discontinue, withhold, terminate, suspend, reduce assistance, or make assistance subject to additional conditions, or to change the manner or form of payment to a protective, vendor, or 2-party payment."

coverage at the point of sale. *See* Am. Compl. ¶¶ 33-34; 42 U.S.C. § 1396r-8(h); 42 C.F.R. § 456.722. DHCF contracts with a third party company, Xerox,[2] to process claims using an ECM system. Am. Compl. ¶ 33.

## II. Factual Background

Plaintiffs, who suffer from various ailments that necessitate treatment with prescription drugs, all receive Medicaid benefits in the District of Columbia. Am. Compl. ¶¶ 5-13. They allege that on various occasions their prescription drug coverage under Medicaid was "denied, terminated, reduced, or delayed," and that D.C. took such actions without providing them with legally-required timely and adequate written notice of the reasons for coverage denials or reductions, the right to request a hearing, and the circumstances under which coverage would be reinstated if a hearing was requested. *Id.* ¶¶ 48-174.

More specifically, in their complaint plaintiffs allege multiple instances in which they went to fill prescriptions at pharmacies, were told by the pharmacies that Medicaid would not cover the prescriptions, and were not given written notice of either the reasons for the rejections or their procedural rights. *Id.* As a result, plaintiffs allege that in some cases they had to pay out-of-pocket for medication. *E.g., id.* ¶¶ 50, 52 (plaintiff NB); *id.* ¶¶ 67-68, 77 (plaintiff Doe). In other cases, plaintiffs allege that they were able to obtain their prescriptions, covered by Medicaid, at a different pharmacy, *e.g., id.* ¶ 57 (plaintiff

---

[2] D.C. contracted with Affiliated Computer Services, Inc. ("ACS") at the time plaintiffs filed their complaint. Subsequently, Xerox acquired ACS, and now D.C. contracts with Xerox to process prescription drug claims using the ECM system. *See* Pls.' Opp'n to Defs.' Mot. to Dismiss, or, in the Alternative, for Summ. J. ("Pls.' Second Opp'n") [Dkt. # 48] at 14 n.5; Defs.' Second Mem. at 4.

Wynn); *id.* ¶ 97 (plaintiff Anderson), or at the original pharmacy at a later time or date, *e.g.*, *id.* ¶ 103 (plaintiff Rucker); *id.* ¶ 67 (plaintiff Doe); *id.* ¶ 163 (plaintiff Maldonado), or instead were able to obtain an emergency supply from D.C., *id.* ¶ 60 (plaintiff Wynn). In still other instances, the pharmacy, rather than refusing to fill a plaintiff's prescription altogether, instead filled a generic drug or other substitute formulation, *id.* ¶ 79 (plaintiff Doe); *id.* ¶ 161 (plaintiff Maldonado), or a dosage formulation different from the one actually prescribed, *id.* ¶¶ 59-60 (plaintiff Wynn).

Plaintiffs further allege that in many cases the pharmacy did not explain to them why a given prescription was not covered by Medicaid and thus would not be filled, *e.g.*, *id.* ¶ 50 (plaintiff NB), but in some cases the pharmacy did give a reason, such as that the prescription lacked a required prior authorization from the prescribing doctor, *e.g.*, *id.* ¶ 59 (plaintiff Wynn); *id.* ¶¶ 70-73, 81-82 (plaintiff Doe); *id.* ¶ 169 (plaintiff Maldonado), or that the pharmacy computer system showed the patient as ineligible or inactive, *id.* ¶ 50 (plaintiff NB); *id.* ¶¶ 101-103 (plaintiff Rucker); *id.* ¶ 165 (plaintiff Maldonado); *id.* ¶¶ 146, 150 (plaintiff Tatum), or did not find the patient's Medicaid identification number in the system at all, *id.* ¶ 90 (plaintiff Anderson).

Plaintiffs also allege that doctors and pharmacists committed errors or omissions that led to problems for plaintiffs in filling prescriptions. For instance, plaintiffs describe numerous occasions on which doctors failed to submit prior authorizations in a timely manner, *e.g.*, *id.* ¶¶ 59-60 (plaintiff Wynn); *id.* ¶ 119-122 (plaintiff Robinson), or in a complete and adequate form, *id.* ¶¶ 107-108 (plaintiff Rucker), or failed to submit or renew them altogether, *id.* ¶¶ 77, 81-82 (plaintiff Doe). Moreover, plaintiffs allege that

pharmacists made errors in several ways, such as filling an incorrect dosage formulation different from the one actually prescribed, *id.* ¶¶ 59-60 (plaintiff Wynn), unilaterally reducing the number of inhalers a plaintiff received by mistakenly claiming that Medicaid only covered one, *id.* ¶ 67 (plaintiff Doe), and submitting the wrong Medicaid identification number for a plaintiff, *id.* ¶ 102 (plaintiff Rucker).  Plaintiffs also cite examples of pharmacies allegedly experiencing problems with their computer systems, including the computer inaccurately reflecting the patient as not covered by Medicaid, *id.* ¶¶ 102-103 (plaintiff Rucker), or as "inactive" for some unknown reason, *id.* ¶¶ 146, 150, 153 (plaintiff Tatum).

### III.    Procedural History

Five of the plaintiffs initiated this action on September 7, 2010. *See* Compl. [Dkt # 3].  Defendants moved to dismiss the complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).  *See* Defs.' First Mot.  I granted defendants' motion on the ground that plaintiffs lacked Article III standing and dismissed the case.  *See NB v. District of Columbia*, 800 F. Supp. 2d 51 (D.D.C. 2011).  Plaintiffs appealed, and on June 8, 2012, our Circuit Court reversed, finding that plaintiffs had alleged facts sufficient to establish that at least one plaintiff, John Doe, had standing on a procedural injury theory.  *See NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77 (D.C. Cir. 2012); *see also Comcast Corp. v. FCC*, 579 F.3d 1, 6 (D.C. Cir. 2009) ("if one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits

of the case" (internal quotation marks and citation omitted)).  Accordingly, the remaining grounds for dismissal in defendants' first Motion to Dismiss are still pending.

Following remand from our Circuit Court, plaintiffs moved to amend their complaint to add four new plaintiffs and new facts.  *See* Pls.' Consent Mot. for Leave to Amend and to Supplement their Compl. and to Add Pls. [Dkt. # 42].  I granted the motion, and on June 21, 2013, plaintiffs filed their Amended Complaint [Dkt. # 43], which made no changes to their legal causes of action.[3]  Thereafter, defendants filed a new motion seeking dismissal, or in the alternative summary judgment.  *See* Defs.' Second Mot.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether the plaintiff has pleaded facts sufficient to "raise a right to relief above the speculative level," assuming that the facts alleged are true.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "While a complaint should not be dismissed unless the court determines that the allegations do not support relief on any legal theory, the complaint nonetheless must set forth sufficient information to suggest that there is some recognized legal theory upon which relief may be granted."  *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1078 (D.C. Cir. 1984).  "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the

---

[3] Both plaintiffs' original Complaint and their Amended Complaint are class action complaints that reflect their intent to bring suit on behalf of themselves and all other D.C. Medicaid recipients similarly situated, *see* Compl. ¶ 13; Am. Compl. ¶ 17, but Plaintiffs' Motion for Class Certification [Dkt. # 11] remains pending.

elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (internal quotation marks and citation omitted); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" (citing *Twombly*, 550 U.S. at 557)). Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a motion under Rule 12(b)(6), a court must construe the complaint in a light favorable to the plaintiff and must accept as true plaintiff's reasonable factual inferences. *See Howard v. Fenty*, 580 F. Supp. 2d 86, 89-90 (D.D.C. 2008); *Smith v. United States*, 475 F. Supp. 2d 1, 7 (D.D.C. 2006) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)). However, courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference "unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks and citations omitted). The court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d at 624.

## ANALYSIS

Plaintiffs' complaint can be distilled to one basic claim: any time a Medicaid recipient presents a prescription at a pharmacy (which may occur hundreds or thousands

of times per day in D.C., *see* Am. Compl. ¶¶ 44-45), is informed by the pharmacy that Medicaid will not cover the drug (for any number of reasons), and the pharmacy visit ends with the recipient being unable to obtain the medication or having to pay out-of-pocket, the recipient has suffered both a "denial" of his claim for the prescription drug, in violation of federal Medicaid law, and a "deprivation" of his property interest in receiving that drug, in violation of the Constitution. Therefore, according to plaintiffs, the recipient is entitled to individually-tailored written notice explaining the reasons for the rejection and an opportunity for a hearing. *See, e.g.*, Am. Compl. ¶ 53; *see* Pls.' Opp'n to Defs.' Mot. to Dimiss, or, in the Alternative, for Summ. J. ("Pls.' Second Opp'n") [Dkt. # 48] at 43.

Much ink has been spilled by the parties on the threshold issue of whether the various alleged instances in which plaintiffs were unable to fill prescriptions constitute "denials" or "deprivations" of covered Medicaid benefits, by a state actor, sufficient to trigger the need for notice, a hearing, or any further due process of law. I find they do not. First, on many of the occasions alleged, plaintiffs did not suffer any "termination, suspension, or reduction" of Medicaid "covered services," but when they did, it was not the result of state action. Therefore they have failed to state a statutory claim under federal Medicaid law. Second, for similar reasons, plaintiffs have failed to state a claim under the Fifth Amendment: plaintiffs did not suffer any "deprivation" of a protected property interest for many of the alleged prescription rejections, but when they did, there was no state action. Finally, because I find that plaintiffs have failed to state any federal law claim, I will dismiss their D.C. law claims.

## I. Failure to State a Claim Under Federal Medicaid Law

Under Title XIX of the Social Security Act, D.C. must provide an opportunity for a fair hearing to a Medicaid recipient "whose claim for medical assistance under the [state] plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3). "Medical assistance" means "payment of part or all of the cost of" various "care and services," including "prescribed drugs." *Id.* § 1396d(a)(12). Although the statute does not define "denied," the implementing regulations restrict this term by delineating the specific circumstances in which a Medicaid recipient is entitled to written notice of his right to a hearing—that is, "at the time" the state takes "any action affecting his . . . claim." 42 C.F.R. § 431.206(b), (c)(2). And "action," in turn, means "a termination, suspension, or reduction of Medicaid eligibility or covered services." *Id.* § 431.201. Accordingly, in order to state a claim under the federal Medicaid statute, plaintiffs must adequately allege that a state actor terminated, suspended, or reduced their Medicaid benefits for *covered* prescription drugs.[4]

Not surprisingly, plaintiffs have cast their factual allegations in just such language. *See, e.g.*, Am. Compl. ¶ 1 (alleging that defendants have a policy of failing to provide notice and an opportunity for a hearing "when [plaintiffs'] prescription drug coverage is denied terminated, reduced, or delayed"); *id.* ¶¶ 48-53 (alleging that "coverage of NB's prescription was being denied" when NB's mother presented a prescription at a pharmacy

---

[4] Plaintiffs concede that neither DHCF nor Xerox "make[s] decisions regarding a recipient's *eligibility* for Medicaid at the time Xerox responds to a pharmacy claim." Pls.' Second Opp'n at 19 (emphasis added). Instead, they claim that "DHCF through Xerox is deciding only whether the prescription drug claim will be covered." *Id.*

and was told that the pharmacy's computer showed NB as ineligible for Medicaid). In plaintiffs' telling, when a Medicaid recipient presents a prescription and the pharmacy, using the ECM system, submits an electronic claim to Xerox "to determine coverage," if the pharmacy receives a reply message indicating the prescription is not covered by Medicaid, the claim has been "denied." Am. Compl. ¶¶ 33-34.[5] Similarly, when a pharmacy gives a Medicaid recipient a substitute drug, or a quantity of the prescribed drug that is different from the prescription, plaintiffs contend that the claim has been "denied and/or reduced." *Id.* ¶ 35.

But while this Court must construe the complaint in a light favorable to the plaintiffs and accept as true plaintiffs' reasonable factual inferences, *see Howard*, 580 F. Supp. 2d at 89-90, I need *not* accept as true "a legal conclusion couched as a factual allegation." *Trudeau*, 456 F.3d at 193 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). And that is precisely what plaintiffs have done in their complaint when they allege, as a *factual* matter, that plaintiffs' prescriptions were "denied," which is a *legal* conclusion. Notwithstanding plaintiffs' understandable frustrations at experiencing delays or the "run-around" at pharmacies when trying to procure prescription medications, I am persuaded that, for many of the instances alleged, plaintiffs were not "denied" a covered Medicaid benefit in any legal sense. Moreover, to the extent they *have* adequately alleged that pharmacies refused to fill prescriptions that were, in fact, covered, there was no state action by D.C.

---

[5] If the claim is "denied," Xerox's electronic reply message gives the pharmacy a "rejection code" identifying the reason for the "denial." *See* Am. Compl. ¶ 34.

First, under the plain language of the federal Medicaid statute and applicable regulations, plaintiffs have failed to state a claim because they have not alleged, when a pharmacy refused to fill a certain subset of prescriptions, that defendants "denied," "terminated," "suspended," or "reduced" their "covered services"—i.e. *covered* prescription drugs. *See* 42 C.F.R. § 431.206(b), (c)(2); *id.* § 431.201; Defs.' Second Mot. at 1-2; Defs.' Second Mem. at 9-10. In short, if a prescription does not meet certain threshold criteria established by state law, it is not a "covered" drug, and therefore a pharmacy's refusal to fill it is not a legal "denial" of a *covered* benefit.

It is undisputed that federal law permits states to place restrictions on prescription drugs covered by Medicaid. *See* 42 U.S.C. § 1396r-8(d)(1), (5) (permitting prior authorization programs subject to certain requirements); 42 C.F.R. § 440.230(d) ("The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures."); D.C. MUN. REGS. tit. 29, § 2706 ("Limitations and Requirements for Certain Services"); *see also Pharm. Research and Mfrs. of Am. v. Walsh*, 538 U.S. 644, 665 (2003) ("the Medicaid Act gives the States substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in the best interest of the recipients" (internal quotation marks and citation omitted)). Pursuant to that authority, D.C. has mandated certain coverage restrictions, including a "prior authorization" requirement for certain drugs—such as "nonpreferred" drugs listed on the Preferred Drug

List ("PDL"),[6] medically necessary brand-name medications with generic equivalents, certain medications with quantity limits, and Schedule II narcotics and certain injectable drugs. *See* Am. Compl. ¶¶ 36-37; D.C. MUN. REGS. tit. 29, § 2706. For drugs requiring prior authorization, the prescribing physician must submit documentation and obtain approval from DHCF before Medicaid will cover the prescription. *See* Am. Compl. ¶¶ 36-37. In addition, a state may substitute prescription drugs and formularies for those on the PDL, or substitute generic drugs that are the therapeutic equivalent. *See* D.C. MUN. REGS. tit. 29, §§ 2703.1, 2706.3, 2704.1.

Tellingly, plaintiffs acknowledge in their complaint that a pharmacy will receive a rejection code from the ECM system when the prescribed drug requires prior authorization and the prescribing doctor has not submitted one, *see* Am. Compl. ¶¶ 36-37, 39-41,[7] and many of plaintiffs' allegations involve such a scenario, *see supra* Factual Background. But in such circumstances a pharmacy's refusal to fill is not a legal "denial" of a *covered* benefit, because such a prescription is not "covered" in the first place—at least not without prior authorization. *See* 42 U.S.C. § 1396r-8(d)(5) (a state prior authorization program "may require, *as a condition of coverage* or payment for a covered outpatient drug . . . the approval of the drug before its dispensing . . ." (emphasis

---

[6] Pursuant to its authority to impose coverage restrictions, D.C. has established a Preferred Drug List ("PDL"), which lists, for a given drug class, the "preferred" drugs that Medicaid covers, as well as the "non-preferred" drugs, which Medicaid will not cover without "prior authorization." *See* Am. Compl. ¶¶ 36-37. The PDL is a public document, available at https://dc.fhsc.com/providers/PDL.asp.

[7] Additionally, if the pharmacy submits a claim for a drug with quantity limits and the prescription exceeds those limits, Xerox will send the pharmacy an electronic message rejecting the prescription. Am. Compl. ¶ 41.

added)). Indeed, as defendants point out, in order for Medicaid to cover a prescription, it must meet certain prerequisites: it must be validly prescribed, must be presented at a Medicaid-participating pharmacy, and must have a prior authorization, if necessary. *See* Defs.' Second Mem. at 15. Accordingly, if a Medicaid recipient shows up at a pharmacy without a prescription and as a result does not receive medication, this would not be a "denial" entitling him to notice and a hearing. *Id.* So too if he presents a valid prescription at a non-participating pharmacy and as a result the pharmacist refuses to fill it. *Id.* In either case, he may very well have existing Medicaid coverage for the prescribed drug, but the pharmacy's refusal to fill his prescription in those circumstances would clearly not be a "termination, suspension, or reduction" of his covered Medicaid benefits. So too, then, if the patient presents a prescription that lacks a prior authorization. And similarly, since D.C. may permissibly substitute prescription drugs and formularies for those on the PDL, or substitute generic drugs that are the therapeutic equivalent, it follows that when a pharmacy makes such a permissible substitution, it does not constitute a legal "denial" of the original prescription.

Simply put, just because a Medicaid recipient is entitled to coverage of prescription drugs *in general* does not mean he is entitled to receive any drug under the sun. Nor, therefore, is he entitled to receive notice and a hearing when a pharmacy declines to fill just any prescription whatsoever. To the contrary, the term "covered services" means those drugs that are *covered* by Medicaid, which drugs are

14

circumscribed by the limits D.C. has lawfully imposed.[8] Accordingly, defendants'

obligation to comply with the notice requirements of Medicaid law only arises where

there has been a "termination, suspension, or reduction" of a benefit created by the

Medicaid program, i.e. a covered drug. *See* Defs.' Second Mem. at 10. Thus, to the

extent plaintiffs have made factual allegations regarding prescriptions refused for lack of

prior authorization or failure to meet other valid restrictions, or regarding receipt of

substitute drugs, no legal "denial" occurred, and no due process rights are due.[9]

Next, to the extent plaintiffs have adequately alleged in their other factual

allegations that any *covered* drug was rejected by a pharmacy (or filled with a lower

quantity or dosage), plaintiffs have still failed to state a statutory claim because they have

failed to allege whether and how defendants took any *state action* that would render such

---

[8] Plaintiffs contend that the argument that a Medicaid recipient is not entitled to due process in the event his prescription has been rejected on the basis it is not a "covered service" is "contrary to federal law." Pls.' Second Opp'n at 21 n.2. In support, they rely in part on 42 C.F.R. § 431.220(a)(2), which provides that a state Medicaid agency "must grant an opportunity for a hearing" to "[a]ny beneficiary who requests it because he or she *believes* the agency has taken an action erroneously." *Id.* (emphasis added). But this regulation, which sets forth "[w]hen a hearing is required," is simply inapposite. Nowhere do plaintiffs allege that they requested a hearing from D.C. and did not receive one. Instead, their legal claims turn on lack of *notice*, which—as discussed above—is governed by a different regulation (42 C.F.R. § 431.206(c)(2)) and is required under different circumstances (when the state takes "any action affecting [a recipient's] claim").

[9] Plaintiffs inaccurately assert that our Circuit Court "specifically found that '[i]n their complaint, plaintiffs recount multiple instances in which they were denied prescription coverage without written notice of either the reason for the denial or their procedural rights.'" Pls.' Second Opp'n at 13-14 (quoting *NB ex rel. Peacock*, 682 F.3d at 81). Our Circuit Court "found" no such thing; that statement is taken from a paragraph in which the court merely summarized the allegations in plaintiffs' complaint. And, in any event, the court only analyzed plaintiffs' allegations for purposes of a standing analysis and did not reach the merits of plaintiffs' claims. *See NB ex rel. Peacock*, 682 F.3d at 82 ("In assessing plaintiffs' standing, 'we must assume they will prevail on the merits' of their claims . . ." (quoting *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011))); *id.* at 85 ("assuming plaintiffs are correct that such notice is required (as we must in evaluating standing) . . .").

rejections legal "denials" within the meaning of the statute and regulations. *See Rosen v. Goetz*, 410 F.3d 919, 926 (6th Cir. 2005) ("These [Medicaid] provisions apply where . . . *a State takes an 'action,'* which the regulations define as 'a termination, suspension, or reduction of Medicaid eligibility or covered services.'" (citing 42 C.F.R. § 431.201) (emphasis added)).

As defendants point out, plaintiffs' complaint is replete with detailed factual allegations concerning the actions of doctors and pharmacies that led to problems for plaintiffs in filling prescriptions. *See* Defs.' First Mot. at 20-21; Defs.' Second Mem. at 22. For instance, plaintiffs allege that doctors failed to submit or renew prior authorizations, pharmacies experienced computer problems, and pharmacists made errors, including individual decisions not to fill prescriptions or requested formularies. *See supra* Factual Background.

According to plaintiffs' own complaint, then, their inability to procure medications on certain occasions is attributable to a range of acts or omissions by private actors— including errors or oversights by doctors and pharmacists (and perhaps the patients themselves). But since D.C. did not perform any of those acts (or omissions), it follows that none of those circumstances involved state action in terminating, suspending, or reducing plaintiffs' Medicaid coverage for prescription drugs. *See Rosen*, 410 F.3d at 926. And, in comparison to these specific allegations regarding doctors and pharmacists, plaintiffs' allegations in their complaint against D.C. are merely conclusory. *See, e.g.*, Am. Compl. ¶¶ 48-53 (alleging facts regarding plaintiff NB—including that NB's mother attempted to fill a prescription, was told by the pharmacist that NB was ineligible for

Medicaid coverage, paid out-of-pocket for the medication, and then was reimbursed by the pharmacy one week later when the pharmacist informed her that the pharmacy computer now showed NB as eligible—and then alleging, in conclusion, that "[d]efendants' actions deprived NB of her due process notice and hearing rights" without any further mention of defendants). Put simply, plaintiffs set forth no *facts*, apart from conclusory statements, indicating that they were denied coverage by the defendants. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions" (alteration in original) (internal quotation marks and citation omitted)).[10]

In sum, plaintiffs have failed to state a claim that they experienced any "termination, suspension, or reduction" of their Medicaid "covered services," by defendants, that would have triggered their right to notice and any further due process under federal Medicaid law.

---

[10] One further example helps illustrate the absence of state action by D.C. when a pharmacy rejected a certain prescription. Plaintiff Rucker alleges that when he presented a prescription, "the pharmacy told him that his Medicaid coverage had been denied and that he was not eligible for Medicaid." Am. Compl. ¶ 101. When Rucker subsequently called DHCF's telephone hotline, however, he was told that he was indeed eligible for Medicaid and that the pharmacy had submitted the wrong Medicaid identification number for him. *Id.* ¶ 102. Rucker called the pharmacy the next day and was told that the pharmacy computer still showed him as ineligible and that the computer system was "experiencing problems." *Id.* ¶ 103. Rucker then continued to call the pharmacy back for three to four days "until the problem was finally fixed." *Id.* Under these facts, no state action by D.C. terminated, suspended, or reduced Rucker's coverage for prescription drugs. On the contrary, at no point did Rucker's Medicaid coverage status for the drug change at all, much less change at the hands of D.C. The only conduct that led to rejection of the prescription in this scenario was pharmacist or computer error.

## II.     Failure to State a Claim Under the Constitution

In their complaint, plaintiffs also allege a constitutional procedural due process violation. Asserting that they have a protected property interest in receiving Medicaid benefits, plaintiffs contend that "Medicaid recipients are entitled to a pre-termination evidentiary hearing before Medicaid benefits are discontinued," Am. Compl. ¶ 183, and defendants deprived them of these benefits without providing such process, *id.* ¶ 184. For similar reasons as those discussed above regarding their claim under federal Medicaid law, however, plaintiffs also fail to state a claim under the Fifth Amendment. How so?

First, for a certain subset of prescriptions—those refused for lack of prior authorization or failure to meet other valid restrictions, or those for which patients received substitute drugs—plaintiffs have failed to adequately allege that they suffered a deprivation of a protected property interest. And second, to the extent they *have* alleged a deprivation for other alleged instances of prescription rejections, they have nonetheless failed to adequately allege any state action by defendants that caused such a deprivation. In either case, a necessary prerequisite for triggering constitutional due process protections is lacking.

To bring a constitutional procedural due process claim, a plaintiff must show (1) a deprivation by the government, (2) of a liberty or property interest, (3) without due process of law. *See Lightfoot v. District of Columbia*, 273 F.R.D. 314, 319 (D.D.C. 2011) (citing *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991)). Accordingly, such a claim requires the Court first to determine whether plaintiffs have

18

asserted a liberty or property interest protected by the due process clause, and, if they have, next to determine whether a state actor caused any deprivation of that interest (before deciding what, if any, process was due). *See Simms v. District of Columbia*, 699 F. Supp. 2d 217, 224 (D.D.C. 2010) ("In order to trigger the Due Process Clause . . . there must be a 'state action.'"); *Propert*, 948 F.2d at 1331. Similarly, in order to succeed on a constitutional claim under 42 U.S.C. § 1983, plaintiffs must show that a person acting under color of state law violated a right secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).[11] Private conduct thus falls outside the scope of a due process claim brought under Section 1983. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citations omitted)).

Here, defendants concede, as they must, that plaintiffs have a protected property interest in the receipt of Medicaid prescription drug benefits. *See* Defs.' Reply in Supp. of Mot. to Dismiss ("Defs.' First Reply") [Dkt. # 24] at 15; *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972) ("a person receiving welfare benefits under statutory and administrative standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process" (citing *Goldberg*

---

[11] "Where . . . the plaintiff seeks to hold a municipality liable under Section 1983, the inquiry divides into two: the plaintiff must first establish a predicate constitutional violation; thereafter, the plaintiff must establish that a 'policy or custom' of the municipality caused the constitutional violation." *Lightfoot*, 273 F.R.D. at 319 (citing *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008)).

*v. Kelly*, 397 U.S. 254 (1970))). Defendants go on to qualify this concession, however, arguing that while plaintiffs may have a protected property interest in the receipt of Medicaid benefits *as a general matter*, they lack such an interest under the particular factual circumstances alleged in the complaint because, absent the prescriptions meeting certain threshold criteria, they have no "legitimate claim of entitlement" to those particular prescription benefits. *See* Defs.' Reply in Supp. of Mot. to Dismiss, or, in the Alternative, for Summ. J. ("Defs.' Second Reply") [Dkt. # 51] at 3-5; *Roth*, 408 U.S. at 577 (to have a property interest in a benefit, a person "must . . . have a legitimate claim of entitlement to it").

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . ." *Roth*, 408 U.S. at 577. Accordingly, "the welfare recipients in *Goldberg v. Kelly* . . . had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them." *Id.* So too here: Medicaid recipients have a property interest in prescription drug benefits insofar as the federal Medicaid statute and regulations, and D.C. law and regulations, define that interest. Accordingly, defendants argue here that Medicaid recipients' claim of entitlement to their prescription drug benefits is not "legitimate" without meeting some threshold criteria defined by federal and state law—including that the recipients must "1) be Medicaid recipients whose coverage has not lapsed due to their own error; 2) possess a *complete* prescription (i.e. including prior authorization, if necessary); 3) for a *covered* drug or service; and 4) submit that prescription accurately to DHCF." *See* Defs.' Second Reply at 4-5. I agree.

While I decline to define the precise contours of a Medicaid recipient's protected property interest in his receipt of prescription drugs, for purposes of deciding these motions to dismiss, I agree with defendants that plaintiffs have failed to allege a "legitimate claim of entitlement" at least with regard to that subset of prescriptions they allege were refused for lack of prior authorization or failure to meet other valid restrictions—i.e. prescriptions that were not "covered"—or where substitute drugs were dispensed. Just as, under Medicaid law, a recipient is not entitled to receive just any drug but instead only those drugs that are *covered* by Medicaid (as circumscribed by lawful, state-imposed restrictions), so too a recipient does not have a constitutional "legitimate claim of entitlement" to just any prescription drug whatsoever. Put differently, just because a Medicaid recipient walks into a pharmacy and expects that he will receive whatever is written on his prescription, that does not mean he is then entitled to notice and a hearing when he does not. *See Roth*, 408 U.S. at 577 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.").[12]

---

[12] Plaintiffs argue, by contrast, that "[f]ederal courts have explicitly rejected arguments by state Medicaid agencies that notice and a hearing are not required when the Medicaid benefit was denied based on defendants' contention that the service requested is not a covered service." Pls.' Second Opp'n at 21 n.9. In support of their argument, plaintiffs rely in part on *Haymons v. Williams*, 795 F. Supp. 1511 (M.D. Fla. 1992), in which the court emphasized the word "claim" in *Roth's* "legitimate claim of entitlement" formulation and held that "[p]laintiffs in the present case do not have to show that they are entitled to the home health care benefits in question, only that they have a legitimate *claim* of entitlement to such benefits." *Id.* at 1523. Setting aside that *Haymons* is not binding on this Court, I find that case distinguishable because it involved the *termination* of *already-granted* benefits: the state of Florida terminated two home health care service providers, which provided nursing services to Medicaid-eligible mentally ill and mentally

Next, to the extent plaintiffs *have* adequately alleged that any covered drug to which they were legitimately entitled was rejected by a pharmacy—and thereby have adequately alleged a "deprivation"—they have nonetheless failed to allege facts showing that they suffered that deprivation *at the hands of D.C.* State action requires that "the party charged with the deprivation must be a person who may fairly be said to be a state actor," and a court's approach to this inquiry "begins by identifying the specific conduct of which the plaintiff complains." *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 50-51 (internal quotation marks and citations omitted). In this case, "careful attention to the gravamen of [plaintiffs'] complaint," *Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982), reveals that plaintiffs allege suffering deprivation of Medicaid prescription drug benefits as the result of the actions of doctors and pharmacies. As discussed above in greater detail, plaintiffs' complaint includes detailed factual allegations concerning the actions of doctors and pharmacies, whose individual acts or errors led to problems for plaintiffs in filling prescriptions, (and by comparison includes only conclusory allegations as to how the defendants fit in this factual picture). *See* Defs.' First Mot. at 20-21; Defs.' Second Mem. at 22.

But, generally, private actors, such as doctors and pharmacists, are not acting under color of state law. *See, e.g., San Francisco Arts & Athletics v. United States Olympic Comm'n*, 483 U.S. 522, 543-47 (1987). And in the Medicaid context

---

retarded individuals residing in "Adult Congregate Living Facilities," without giving those Medicaid recipients notice or an opportunity for a hearing. Here, by contrast, the issue is whether plaintiffs have, in the first instance, a legitimate claim of entitlement to any given claim for a prescription drug that they present at a pharmacy.

specifically, courts have found that independent decisions made by private parties, such as doctors, are not state action. *See Blum*, 457 U.S. at 1002-1008 (holding that nursing home resident Medicaid recipients, who challenged as due process violations nursing homes' decisions to discharge or transfer them to lower levels of care without notice or an opportunity for a hearing, failed to establish state action because those decisions were made by physicians and nursing home administrators, who are private parties, and "ultimately turn on medical judgments made by private parties").

There are exceptions to the state action doctrine, of course, under which the conduct of private actors may be deemed state action for purposes of a constitutional claim. *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 295 (2001) ("state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself'" (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)); *see also Blum*, 457 U.S. at 1004 ("The purpose of this [nexus] requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."). Nowhere, however, do plaintiffs allege, nor could they, that the acts of doctors and pharmacists should be deemed state action.

Plaintiffs do nonetheless argue that the rejections of prescriptions they experienced involved state action, but, curiously, they attempt to do so by focusing on defendants' alleged failure to provide notice. Relying on their conclusory factual inference that D.C.'s ECM system "decides" or "adjudicates" claims at the point of sale, and thus state

23

action (by D.C. or its agent, Xerox) is necessarily involved when *any* claim is processed and *any* rejection code is returned, *see* Pls.' Opp'n to Defs.' Mot. to Dismiss ("Pls.' First Opp'n") [Dkt. # 18] at 26-28; Pls.' Second Opp'n at 15-16—an inference I reject as unreasonable, *see Howard*, 580 F. Supp. 2d at 89-90—plaintiffs argue that the fact that errors committed by doctors and pharmacies cause rejections is beside the point because what plaintiffs challenge as due process violations are *not* those errors themselves, but instead the failure of defendants to provide notice and the opportunity for a hearing *when* those errors occurred. *See* Pls.' First Opp'n at 26; Pls.' Second Opp'n at 20-23. But that argument puts the cart before the horse. Simply put, if no state action caused a deprivation of a protected property interest in the first place—as none did here—then a due process requirement for the state to provide notice and a hearing never arose.[13]

---

[13] Our Circuit Court's prior decision on standing in this case is not at odds with my ruling on state action today. In that opinion, our Circuit Court found that plaintiff Doe met the causation element of Article III standing and rejected D.C.'s argument that Doe's injuries were traceable not to DHCF's actions, but instead to the actions of private physicians who failed to obtain required prior authorizations, or to Doe's need for more medication than was allowed by Medicaid rules. *See NB ex rel. Peacock*, 682 F.3d at 86. Observing that D.C.'s "arguments conflate the cause of Doe's coverage denials—such as lack of prior authorization and Medicaid coverage restrictions—with the cause of his alleged [procedural] injury," the court held that "*[f]or purposes of Doe's standing*, it makes no difference that a physician may cause a coverage denial by failing to seek prior authorization, for the injury he alleges is not the initial denial of coverage, but rather DHCF's failure to provide the information he needs to remedy that denial and obtain medically necessary prescriptions without undue cost or delay." *Id.* (emphasis added). This discussion of causation is not applicable to the state action inquiry, however, because for purposes of assessing standing, our Circuit Court was required to assume that plaintiffs would prevail on the merits of their claims. *See id.* at 82 (citing *LaRoque*, 650 F.3d at 785). In other words, the Circuit Court had to assume that Doe had suffered a denial or deprivation of coverage that triggered his right to procedural protections. By contrast, in assessing the sufficiency of plaintiffs' legal claims on a motion to dismiss, I must first determine whether plaintiffs' have adequately alleged that state action by defendants caused a deprivation of a protected property interest in the first place, for otherwise any due process requirements for D.C. to provide notice and the opportunity for a hearing are not triggered at all.

In sum, plaintiffs have failed to state a claim that they suffered any deprivation, by defendants, of their property interest in receiving Medicaid prescription drug benefits that would have triggered their right to notice and any further due process protections under the Constitution.

## III. Dismissal of Claims Under D.C. Law

Finally, because I have found that plaintiffs have failed to allege a substantial federal cause of action, I will dismiss plaintiffs' D.C. law claims for lack of pendent jurisdiction. *See Clifton Terrace Assocs., Ltd. v. United Techs. Corp.*, 929 F.2d 714, 723 (D.C. Cir. 1991).

## CONCLUSION

Thus, for all of the foregoing reasons, the Court GRANTS defendants' Motions to Dismiss. A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge