# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

**MAR 26 2017**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| N.B. *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) |
| | ) |
| **THE DISTRICT OF COLUMBIA** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**Civil Case No. 10-1511 (RJL)**

## MEMORANDUM OPINION
March 26, 2017 [Dkt. # 64]

Plaintiffs in this case are residents of the District of Columbia ("the District" or "D.C.") who are eligible for Medicaid benefits and who unsuccessfully sought coverage for specific drug prescriptions. In their Amended Complaint, they allege that the District, the Mayor of D.C., and the Director of the Division of Health Care Finance ("DHCF") have systematically failed to provide Medicaid recipients with "adequate and timely notice, the opportunity for a fair hearing, and the opportunity for reinstated coverage pending a hearing decision" when they are denied coverage for specific prescriptions, in violation of the Fifth Amendment to the U.S. Constitution, Title XIX of the Social Security Act, and local D.C. law. Am. Compl. ¶ 1 [Dkt. # 43].

Following remand from our Circuit Court, this Court is now faced with defendants' Updated Motion to Dismiss [Dkt. # 64] the Amended Complaint for failure to state a claim. *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 35–36 (D.C. Cir. 2015). Although plaintiffs' claims under Title XIX have been dismissed, plaintiffs continue to allege violations of the Due Process Clause of the Fifth Amendment to the

Constitution and District of Columbia law, D.C. Code § 4-201.01, *et seq.*, and they seek declaratory and injunctive relief under 42 U.S.C. § 1983. *See* Am. Compl. ¶¶ 181–195. Upon consideration of the pleadings and relevant law, and for the reasons explained below, defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

### I.   Legal and Factual Framework

The factual and legal issues underlying this case are described in painstaking detail in the earlier opinions of both this Court and our Circuit Court, so a more concise background summary will suffice here. *See N.B. ex rel. Peacock v. Dist. of Columbia*, 800 F. Supp. 2d 51, 52–54 (D.D.C. 2011); *N.B. ex rel. Peacock v. Dist. of Columbia*, 682 F.3d 77, 80–81 (D.C. Cir. 2012); *N.B. ex rel Peacock v. Dist. of Columbia*, 34 F. Supp. 3d 146 (D.D.C. 2014); *N.B ex rel. Peacock v. Dist. of Columbia*, 794 F.3d 31, 35–36 (D.C. Cir. 2015).

In 1968, Congress established Medicaid as a "cooperative federal-state program that provides federal funding for state medical services to the poor." Title XIX of the Social Security Act ("Grants to States for Medical Assistance Programs"), 42 U.S.C. § 1396 *et seq.*; *Frew v. Hawkins*, 540 U.S. 431, 433 (2004). Although funding comes from both federal and state governments (including the District of Columbia), Medicaid is administered by state agencies. *See* 42 U.S.C. § 1396a(a)(2), (a)(5); 42 C.F.R. § 430.0.

The District's Department of Health Care Finance ("DHCF") administers the D.C. Medicaid program, which provides, *inter alia*, certain prescription drug benefits to

qualified beneficiaries. D.C. CODE § 7-771.07(1). In order to manage its prescription coverage benefit, DHCF contracts with Xerox, a third-party company, to operate an electronic claims management system and process Medicaid prescription drug coverage claims at the point of sale. *See* Am. Compl. ¶¶ 33-34; Defs.' Updated Mot. to Dismiss at 3 n.2.

The plaintiffs in this case[1] all receive Medicaid benefits in the District and suffer from conditions that require prescription drug treatment. Am. Compl. ¶¶ 5–13, 17. They allege that on various occasions their prescription drug coverage under Medicaid was "denied, terminated, or reduced," and the District failed to provide them with any "notice of the denial, the reason for the denial, the right to a hearing, or the circumstances under which Medicaid will continue providing coverage during the appeal process." Am. Compl. ¶¶ 47, 58, 61, 74, 80, 84, 141, 154, 172. Specifically, plaintiffs allege multiple instances in which they attempted to fill prescriptions at pharmacies, were told that Medicaid would not cover the prescriptions, and were not given notice of the reasons for the rejections or their procedural rights for challenging the denial. *Id.* ¶¶ 57, 58, 61, 77, 80, 140, 141, 154, 165, 172.

## II.   Procedural History

Five of the plaintiffs initiated this action in 2010. *See* Compl. [Dkt # 3]. In 2011, I held that plaintiffs lacked Article III standing and granted defendants' motion to dismiss the case. *See NB v. District of Columbia*, 800 F. Supp. 2d 51 (D.D.C. 2011). In 2012,

---

[1] In their pleadings, plaintiffs inform the Court that plaintiffs Peacock, Robinson, Rucker, and Tatum must be withdrawn from the case due to lack of standing, although they have not formally withdrawn them from the matter. Pls.' Opp'n to Defs.' Updated Mot. to Dismiss at 1 n.1 [Dkt. # 67]. The Court will therefore rest its analysis on the allegations pertaining to the remaining plaintiffs.

our Circuit Court reversed on appeal, holding that the plaintiffs' complaint included sufficient factual allegations to establish that at least one plaintiff, John Doe, had standing on a procedural injury theory. *See NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 82 (D.C. Cir. 2012). On remand, plaintiffs amended their complaint to add four new plaintiffs and new facts, without changing their legal causes of action. Am. Compl. In 2014, I determined that plaintiffs' Amended Complaint failed to state a claim under either Title XIX or the Fifth Amendment, dismissed the D.C. law claims for lack of pendent jurisdiction, and again dismissed the case. *NB ex rel. Peacock v. District of Columbia*, 34 F. Supp. 3d 146 (D.D.C. 2014). On appeal, our Circuit Court affirmed in part and reversed in part, holding that though plaintiffs failed to state a claim under Title XIX, they had alleged that D.C. had deprived them of their protected property interests in prescription coverage, and remanded to this Court to consider what process the plaintiffs are entitled to under the Fifth Amendment. *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 40–44, (D.C. Cir. 2015). In light of the partial reversal, the Circuit also noted that I could reconsider this Court's jurisdiction over the D.C. law claims on remand. *Id.* at 44.

## STANDARD OF REVIEW

When deciding a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). The complaint must include "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do"; instead, the complaint must include factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Co v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

Under the Rule 12(b)(6) standard, Court must read the complaint's factual allegations in the light most favorable to the plaintiff, *id.*, but the Court is not required to accept plaintiff's legal conclusions, even if they are framed as factual assertions. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). As a result, a claim that is rooted in a faulty legal theory must be dismissed, "whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Nietzke v. Williams*, 490 U.S. 319, 327 (1989).

At the motion to dismiss stage, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ANALYSIS

At this stage, plaintiffs have two remaining claims. First, they allege that the District's practices regarding Medicaid prescription denials are constitutionally insufficient and fail to provide the notice and procedure required by the Due Process Clause of the Fifth Amendment. Second, they allege that those practices violate the District's local statutes that provide notice and procedural protections to public assistance recipients.

5

## I.      Fifth Amendment Due Process

The Fifth Amendment to the Constitution guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. As a result, individuals are constitutionally entitled to "notice and an opportunity to be heard before the Government deprives them of property" interests.  *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993).  In order to state a procedural due process claim, a plaintiff must allege "(i) deprivation of a protected liberty or property interest; (ii) by the government; [and] (iii) without the process that is 'due' under the Fifth Amendment." *N.B. ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 41 (D.C. Cir. 2015) (citations omitted).

Our Circuit has already held that the plaintiffs "have a legitimate claim of entitlement to coverage of any drug not completely excluded from coverage under Medicaid," which constitutes a "property interest protected by the Fifth Amendment." *Id.* at 42.  The Circuit also held that the plaintiffs have "adequately alleged that Xerox, [DHCF's third party electronic claims manager] . . . determined their eligibility for benefits while acting as an agent of the District," such that the deprivation of their property interest in their prescription benefits was caused by state action. *Id.* at 42–44. As a result, the analysis here must focus on the third prong—what process is due to plaintiffs when DHCF, through Xerox's ECM system, denies coverage for a drug that is not totally excluded from Medicaid coverage.

Plaintiffs allege two separate due process arguments.  First, they assert that they are entitled to more notice than the District currently provides when prescription claims

are denied at the point of sale. Am. Compl. ¶ 47. Second, they argue that they must receive a "pre-termination evidentiary hearing before prescription drug benefits are discontinued." *Id.* ¶ 183). For the following reasons, I agree with the former and disagree with the latter.

### a. Constitutional Due Process Requires that Plaintiffs Receive Some Written Notice of the Reasons for their Denial at the Point of Sale.

The District argues that Medicaid beneficiaries receive constitutionally adequate notice through a "series of codified procedural safeguards and informal mechanisms for seeking information and assistance." Defs.' Updated Mot. to Dismiss at 17. First, they assert that beneficiaries do not need written notice that the prescription is being denied, because "they are leaving the pharmacy with something other than what [they] requested," and the fact of the denial is self-evident. Defs.' Updated Mot. to Dismiss at 15. Second, they argue that beneficiaries receive adequate notice of their procedural rights (including their rights to temporary coverage) because they are codified and published in the D.C. Code and D.C. Municipal Regulations. *Id.* at 14–15 (citing *City of West Covina v. Perkins*, 525 U.S. 234, 241 (1999) (holding that due process does not require "individualized notice of state-law remedies which are established by published, generally available state statutes and case law")). Lastly, the District argues that the beneficiary does not need notice of the reasons for the denial, because they can ask the pharmacist directly for the reason or call District officials for assistance with their prescription coverage. *Id.* at 16–17. In addition, they argue that a beneficiary does not need to know the reason for their denial, because the District does not require

beneficiaries to know the reason for the denial when they invoke their procedural rights, and the DHCF always bears the "burden of producing sufficient evidence to establish the reasons for the denial" at an administrative appeal hearing. *Id.* at 17 (citing D.C. MUN. REGS. tit. 1, § 2971.1–.7, *id.* § 2822.2(a).)

By comparison, plaintiffs assert that whenever DHCF denies Medicaid coverage for a prescription, they are constitutionally entitled to individualized written notice that informs them of the denial, the specific reasons for denial, the beneficiary's rights to a hearing, and the circumstances under which coverage may be extended pending a hearing. Am. Compl. ¶ 47; Pls.' Opp'n to Updated Mot. to Dismiss at 4, 11 [Dkt. # 67].

The Supreme Court stated in *Mullane v. Central Hanover Bank & Trust Co.* that in order to satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950); *Dusenberry v. United States*, 534 U.S. 161, 168 (2002); *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 31 (D.C. Cir. 2014).[2] Applying this framework, I find that plaintiffs have

---

[2] Plaintiffs argue that the Court, when analyzing a due process claim that challenges the adequacy of notice to a property interest holder, must apply the three-factor balancing test laid down in *Mathews v. Eldridge*, 424 U.S. 893, 903 (1976). Plaintiffs are correct only insofar as the law in our Circuit used to require courts to apply the *Mathews* framework when assessing due process claims challenging the adequacy of the notice provided. *Lepelletier v. F.D.I.C.*, 164 F.3d 37, 45–46 (D.C. Cir. 1999) (reversing district court dismissal of due process claim that considered and applied *Mullane* test, on grounds that district court failed to consider *Mathews* factors). However, the Supreme Court subsequently held that *Mathews* is not an "all-embracing test for deciding due process claims" and that the *Mullane* reasonableness test is appropriate "when confronted with questions regarding the adequacy of the method used to give notice*." Dusenberry v. United States*, 534 U.S. 161, 168 (2002). *See also Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 31–32 (D.C. Cir. 2014) (applying *Mullane* test to plaintiffs' notice-related claim, and *Mathews* balancing factors to their claims challenging the adequacy of their procedural rights).

stated a claim that they have received insufficient notice regarding the reason for their prescription denial at the point of sale.

Our Circuit Court has repeatedly held that individuals faced with the deprivation of a property interest must be informed of the government's reason for the denial. *Ralls Corp. v. Committee on Foreign Investment in the United States*, 758 F.3d 296, 318 (D.C. Cir. 2014) (noting that "the right to know the factual basis for the action" is an essential component[] of due process" (internal citations omitted)); *Reeves Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 599 (D.C. Cir. 1993) ("[W]hen a notice requires its targets to guess among several possible bases for adverse government action, it has not served [the] fundamental purposes [of due process.]"); *Gray Panthers v. Schweiker* ("*Gray Panthers I*"), 652 F.2d 146, 168–69, 172 (D.C. Cir. 1980) ("Without notice or the specific reasons for the denial, a claimant is reduced to guessing what evidence can or should be submitted in response and driven to responding to every possible argument against denial at the possible risk of missing the critical one altogether."). *See also Ass'n of Cmty. Orgs. for Reform Now v. FEMA,* 463 F. Supp. 2d 26, 35 (D.D.C. 2006) (Leon, J.) (holding that plaintiffs had established likelihood of success on due process claim where FEMA's notice of denying housing benefits failed to clearly specify reasons for denial). As alleged in the Amended Complaint, the District currently denies prescription coverage without explaining to the claimant the reason for the denial.

In *Gray Panthers v. Schweiker* ("*Gray Panthers I*"), our Circuit held that the Department of Health and Human Services failed to provide constitutionally adequate

notice to Medicare recipients when it did not give them written notice of the reasons for denying benefits worth less than $100. 652 F.2d 146, 148 (D.C. Cir. 1980). And while it may be the case, as our Circuit Court pointed out, that "in some circumstances . . . a lack of precise initial notice of the grounds for denial may be compensated for by ready access to the adverse evidence or a summary thereof," *Gray Panthers I*, 652 F.2d at 169, the District cannot, as a matter of law, cure the inadequacies of the initial notice—or the total lack thereof—by placing the onus on individuals to proactively ask the pharmacist or call District officials to obtain more clarity. Both this Circuit and other courts around the country have held that requiring individuals to undertake an affirmative inquiry to learn the reasons for their denial is constitutionally insufficient, and thus, the fact that a Medicaid plaintiff *could* conduct such an inquiry is irrelevant to the constitutional analysis. *Gray Panthers v. Schweiker* ("*Gray Panthers II*"), 716 F.2d 23, 32 (D.C. Cir. 1983) (holding that beneficiary's ability to call insurance carrier and supplement written notice was constitutionally inadequate); *Vargas v. Trainor*, 508 F.2d 485, 489–90 (7th Cir. 1974) (holding that ability to gain more information by contacting caseworker did not cure insufficient written notice); *Ortiz v. Eichler*, 616 F. Supp. 1046, 1062 (D. Del. 1985) ("Defendants' . . . contention that notice inadequacies are unimportant because claimants can call the agency for more detailed information—has been repeatedly rejected by other federal courts.").

The beneficiary here is given no indication why the prescription is being denied at the point of sale. As such, he is totally unable to determine what the next best step is. Although he knows that he's not getting Medicaid coverage for his prescription, he has

no indication, for example, whether the denial is attributable to a mistake or omission by the doctor, a determination that the drug is not covered by Medicaid, or a determination that the individual is not eligible for Medicaid coverage.  Without that information, he effectively lacks the opportunity to which the Supreme Court said he was entitled.  In short, he does not know whether to contact his physician, contact the DHCF, or research his procedural rights and invoke his right to a hearing.  This simply cannot constitute adequate notice.  Some initial written notice of the reason for the denial will reasonably apprise the plaintiff of the denial, provide him with information that will assist him in deciding whether to invoke his procedural rights, and allow him to prepare for a hearing should he choose to invoke those rights.  Furthermore, on a more practical level, some initial notice of the reason for denial will likely allow inadvertent or erroneous denials to be resolved quickly and through informal means. *Cf. Gray Panthers I*, 652 F.2d at 172 n.55 (D.C. Cir. 1980) ("[W]e suspect that if a more helpful and thorough notice of the basis for denial were provided, many disputes could be resolved at an earlier stage.").

As a result, I will deny the defendants' Updated Motion to Dismiss having concluded that defendants have failed to provide adequate initial written notice that reasonably apprises plaintiffs of the reasons for the prescription denial.  However, it is inappropriate to determine the nature or scope of specific relief prior to discovery or the Court's determination of any class certification motions.

**b. The Fifth Amendment Does Not Require the District to Cover Denied Prescriptions Until There is an Evidentiary Hearing.**

In addition to their notice claim, plaintiffs also argue that they are constitutionally entitled to a "pre-termination evidentiary hearing before [prescription drug] benefits are discontinued." Am. Compl. ¶¶ 3, 183. Ultimately, this claim boils down to an assertion that the District should cover all denied prescriptions until the District conducts an evidentiary hearing. Pls.' Opp'n to Defs.' Updated Mot. to Dismiss at 32. I disagree.

Under the D.C. Code and municipal regulations, Medicaid beneficiaries are already entitled to a wide range of procedural protections. Any Medicaid beneficiary "aggrieved by [any] action or inaction" is entitled to a fair hearing with the District's Office of Administrative Hearings ("OAH") upon request. D.C. CODE §4-210.01; D.C. MUN. REGS. tit. 29, § 9508. A beneficiary can make a request for an OAH hearing in writing, in person, or by telephone, and he or she simply needs to make a request that includes, the requester's name, contact information, a description of the benefits at issue, and the action to which the person objects. *Id.* tit. 1, § 2971.3. As discussed earlier, a beneficiary has the right to review any information related to the government's decision before the hearing. *Id.* § 2973.4. During the hearing, a beneficiary may be represented by counsel, and has the right to testify, to present and object to evidence, and to subpoena, present, and cross-examine witnesses. *Id.* § 2976.5. At the hearing, the government always bears the burden of producing sufficient evidence to establish the reason for the denial. *Id.* § 2822.2(a). In its pleadings, the District also points to a range of "ad hoc assistance" available to Medicaid beneficiaries: for example, they can contact

DHCF directly to obtain more information about their benefits.  Am. Compl. ¶ 77.  D.C. also offers a Health Care Ombudsman Program, which defendants describe as an "independent entity charged with assisting consumers like plaintiffs in resolving any problem they experience with their coverage or access to health care, helping consumers understand their rights and responsibilities, and resolving complaints regarding their health care."  Defs.' Updated Mot. to Dismiss at 8; D.C. CODE § 7-2071.04.  Last, District law also establishes circumstances under which DHCF will pay for a temporary supply of prescription benefits.  If an otherwise valid prescription is rejected due to lack of a prior authorization from DHCF, or the provider determines that there is a potential emergency, the District's regulations require that the pharmacist provide the beneficiary with a temporary three day supply.  D.C. MUN. REGS., tit. 29, § 2705.1-.2.

Under the Fifth Amendment, individuals are entitled to a hearing before they are "finally deprived of a property interest," and in most contexts, the hearing must occur before the deprivation of the property interest, absent an "extraordinary situation[] where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Mathews v. Eldridge,* 424 U.S. 319, 902 (1976); *United States v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993).  Due process challenges, and the determination whether a post-deprivation hearing is permitted, are governed by *Mathews v. Eldridge*, 424 U.S. 319 (1976).  In that case, the Supreme Court held that Social Security benefits could be constitutionally terminated after an initial ineligibility determination, but before there was a formal evidentiary hearing and a final administrative decision.  *Id.* at 340–50.  In reaching its decision, the Supreme Court held

that courts determining the "specific dictates of due process" should consider three distinct factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 334.  Applying these factors here, I hold that the current administrative procedures are constitutionally adequate and determine that plaintiffs have not stated a claim that they are entitled to prescription coverage until there is an evidentiary hearing.

With respect to the first *Mathews* factor, the personal interest at stake is the individual's "claim of entitlement to coverage of any drug not completely excluded from coverage under Medicaid." *N.B. ex rel. Peacock*, 794 F.3d at 42.  A financially vulnerable individual's ability to obtain assistance in paying for prescription drugs is a significant personal interest that should not be minimized or ignored.  At the same time, I do not wish to overstate the magnitude of the personal interest involved.  Unlike in *Mathews*, plaintiffs are not facing the total termination of their benefits under a particular program; instead, they have received an initial determination that a discrete claim is not covered under the Medicaid program.  Nor is DHCF prohibiting the plaintiff from obtaining the prescription or declaring that the prescription is invalid.  The plaintiff may purchase the prescription out of pocket, if necessary, and the District represents to the Court that individuals may recover their costs if they prevail in an administrative appeal. Defs.' Updated Mot. to Dismiss at 21.

14

The second factor the Court must consider is "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 903, 907. The "pretermination" procedures here are relatively straightforward: an individual presents a signed prescription to a licensed pharmacist, who then enters the claim into an electronic claims management system that determines automatically whether the prescription will be covered. Am. Compl. ¶¶ 33–34. The Amended Complaint includes allegations that, construed favorably, support a reasonable inference that in some instances the electronic claims management system erroneously determined that prescriptions were not eligible for Medicaid coverage. *See, e.g.*, Am. Compl. ¶ 57 (alleging that one pharmacy determined that prescribed glucose monitor prescribed for Delilah Wynn was not covered by Medicaid, whereas second pharmacy filled the prescription under Medicaid); *id.* ¶¶ 164–66 (alleging that Xerox system erroneously determined that Elise Maldonado was ineligible for Medicaid, because DCHF failed to timely file her Medicaid recertification). However, plaintiffs do not allege facts that indicate the *risk* of an erroneous deprivation. For example, the Amended Complaint alleges that, for a single day in 2009, 3,300 out of 6,641 claims submitted through the ECM system were denied, for a 49.7% denial rate. *Id.* ¶ 44. That figure is irrelevant, though, because it simply alleges the total number of denials, and does not distinguish between correct and erroneous deprivations.

As defendants point out, the risk of erroneous deprivation is diminished in situations like the one presented here, where individual discretion is eliminated and the state actor's decision is delegated to an automated process that applies neutral criteria.

*See Sickler v. Campbell Cty.*, 501 F.3d 726, 730 (6th Cir. 2007) (holding that risk of erroneous deprivation was low where prison officials entered dollar amounts into computer system that automatically calculated amounts to withhold, on grounds that procedure "involves elementary accounting that has little risk of error and is non-discretionary");   *Taylor v. Sebelius*, 189 Fed. App'x 752, 761 (10th Cir. 2006) (unpublished) (holding that risk of erroneous deprivation was low when process was "totally automated and [was] controlled by a comprehensive computer program"). Construing the alleged facts most favorably to the plaintiffs, I find that plaintiffs have alleged a risk of erroneous deprivation, but have not alleged that the risk is so great as to weigh in favor of requiring the District to pay for denied prescription coverage until there has been a formal evidentiary hearing.

Lastly, the Court is instructed to consider "the Government's interest, including the function involved and the fiscal and administrative burdens that an additional or substitute procedural requirement would entail." 424 U.S. at 335.  Here, I find that the District has a strong interest in avoiding the enormous fiscal and administrative burdens that will ensue if the District is required to pay for claimants' prescriptions until it holds a formal evidentiary hearing.  Plaintiffs have alleged that the District's ECM system denies as many as 3,300 prescription claims per day.  Am. Compl. ¶ 44.  If the District was required to cover those denied prescriptions until an evidentiary hearing could be held, then the District would be required to hold several thousand hearings per day simply to prevent a crippling administrative backlog and a ballooning financial obligation.  Even more importantly, such a requirement would inevitably dedicate a significant amount of

Medicaid's finite funds to covering prescriptions that will ultimately be determined to be ineligible for Medicaid coverage, which will hinder the District's ability to ensure that Medicaid funds are used to provide covered services to eligible recipients. *See Mathews*, 424 U.S. at 348 ("The cost of protecting those whom the preliminary administrative process has identified as likely to be found undeserving may in the end come out of the pockets of the deserving since resources available for any particular program of social welfare are not unlimited."); *Washington Teachers' Union v. Board of Educ. of Dist. of Columbia*, 109 F.3d 774, 781 (D.C. Cir. 1997) (holding that teachers were not entitled to hearing before termination; weighing third *Mathews* factor heavily and noting that "giving over 400 teachers time to respond . . . and requiring principals to answer each would have slowed the . . . process considerably, both delaying and reducing the financial savings the District so desperately needed").

In light of these three *Mathews* factors, I find that plaintiffs have *not* stated a claim that they are constitutionally entitled to an evidentiary hearing *before* Medicaid denies coverage for a prescription.

## II.   D.C. Code Claims

Although I originally dismissed plaintiffs' D.C. law claims for lack of pendent jurisdiction, *N.B. ex rel Peacock v. District of Columbia*, 34 F. Supp. 3d 146, 160 (D.D.C. 2014), our Circuit Court instructed that I could reconsider this Court's jurisdiction over the local law claims in light of its partial reversal on plaintiffs' federal claims. *N.B. ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 44 (D.C. Cir. 2015). Because the plaintiffs have stated a federal Fifth Amendment claim, and their D.C. local law claims

are so related to their federal claim that they form part of the same case or controversy, I find that I have supplemental jurisdiction under 28 U.S.C. § 1367 to hear their D.C. law claims. However, upon closer review of their allegations and their asserted legal theory, I hold that their local law claims must be dismissed.

Plaintiffs allege that the District violated four specific statutory provisions: D.C. Code §§ 4-210.02, 4-205.55, 4-210.04, and 4-205.59. Am. Compl. ¶ 195. Section 4-210.02 states that the District, upon receipt of a request for a hearing, "shall grant a fair hearing to any . . . recipient of public assistance who claim for assistance has been denied . . . ." Sections 4-205.55 and 4-210.04 determine when written notice is required and the information that the notice must contain. As relevant here, § 4-205.55 requires the District to give "timely and adequate notice in cases of intended action to discontinue, withhold, terminate, suspend, reduce assistance, or make assistance subject to additional conditions" and states that notice must be "postmarked at least 15 days before the date upon which the action would become effective . . . ." Last, § 4-205.59 requires the District to reinstate benefits coverage until a hearing, whenever the District fails to provide timely notice and the recipient requests a hearing within ten days of the postmark of the written notice.

Plaintiffs argue that the District violated all four provisions when they "fail[ed] to ensure that plaintiffs received "timely and adequate notice, the opportunity for a fair hearing, and the opportunity for reinstated drug coverage while a hearing is pending." However, plaintiffs concede that there "is no allegation in the Amended Complaint that plaintiffs requested fair hearings or interim coverage." Pls.' Opp'n to Defs.' Updated

Mot. to Dismiss at 43. As a result, they have failed to state claims under § 4-210.02 and § 4-205.59, which govern the right to a fair hearing and the circumstances under which interim coverage is provided while a hearing is pending. As a result, the proper question here is whether § 4-205.55 and §4-210.04 obligated the District to provide written notice to the plaintiffs when their prescriptions were initially denied. Unfortunately for the plaintiffs, they do not.

Both this Court and our Circuit Court have noted that the District's local code provisions are very similar to the federal protections provided by Title XIX of the Social Security Act and its implementing regulations. *See N.B. ex rel. Peacock v. Dist. of Columbia*, 34 F. Supp. 3d 146, 149 (D.D.C. 2014), *aff'd in part*, 794 F.3d at 47; *see also N.B. ex rel. Peacock v. Dist. of Columbia*, 682 F.3d 77, 187 (D.C. Cir. 2012) (noting that "District of Columbia law imposes the same requirements" as federal law). Our Circuit has already reviewed and affirmed the dismissal of the plaintiffs' claims under the analogous federal provisions. *N.B. ex rel Peacock v. Dist. of Columbia*, 794 F.3d 31 (D.C. Cir. 2015). Given the strong similarities between the two statutory schemes, its earlier analysis is highly instructive here.

Under Title XIX and its implementing regulations, state Medicaid agencies are required to provide an opportunity for a fair hearing whenever an individual's "claim for medical assistance is denied," 42 U.S.C. § 1396a(a)(3), and must provide written notice when there is a "termination, suspension, or reduction of Medicaid eligibility or covered services." 42 C.F.R. § 431.220(a)(1)–(2); *id.* § 401.201. Our Circuit determined that this statutory scheme led to situations where the state agency was required to provide an

opportunity for a fair hearing, but was not required to provide written notice to the recipients. The agency must provide an opportunity whenever a claim is denied, but must only provide a notice when there is a "termination, suspension, or reduction of Medicaid eligibility or covered services," which our Circuit interpreted as encompassing situations where there is an alteration in the beneficiary's status quo.   As a result, the Court held that a "garden-variety denial of prescription drug coverage at the point of sale" triggers the right to a hearing, but does not constitute a "termination, suspension, or reduction" of services or an alteration in the status quo that triggers written notice requirements. *Id.* at 39–40.   Our Circuit Court reinforced its interpretation by noting that the federal regulations require written notice to be provided "at least ten days before" the "termination, suspension, or reduction" of benefits. *Id.* (citing 42 C.F.R. §431.211). Indeed, it further observed that the District cannot know that it is going to deny a prescription until it is submitted to the pharmacist, and thus cannot possibly provide ten days' advance notice before denying prescription coverage. As a result, the Circuit Court held that it made little sense to read the regulations to require written notice for "every denial of prescription drug coverage at the point-of-sale" and affirmed the dismissal of plaintiffs' federal statutory claims. *Id.*

As mentioned earlier, the local statutory scheme corresponds closely to the federal statutory scheme.  Under D.C. law, the District must provide an opportunity for a fair hearing whenever a "claim for assistance has been denied," D.C. Code § 4-210.02, but only requires written "notice in cases of intended action to discontinue, withhold, terminate, suspend, reduce assistance, or make assistance subject to additional

20

conditions." § 4-205.55.  I find that a denial of a prescription claim triggers the right to a fair hearing under § 4-210.02, but does not require written notice under § 4-205.55.  Just like the federal scheme, the D.C. Code does not require written notice unless the District takes action to change the recipient's status quo, which does not occur when it denies coverage for a specific prescription claim.[3]  As a result, plaintiffs' D.C. local law claims must be dismissed for failure to state a claim.

## III.    Claims Against Individual Defendants

Defendants also move to dismiss Mayor Bowser and DHCF Director Turnage as defendants.  Mayor Bowser and Director Turnage were both sued in their official capacities.  Am. Comp. at 1 [Dkt. #43].  However, the District of Columbia is also a defendant in this matter, and "[t]here is no . . . need to bring official-capacity actions against local government officials, for . . . local government units can be sued directly for damages or injunctive or declaratory relief."  *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985).  As a result, the plaintiffs' official-capacity claims against the Mayor and

---

[3] Plaintiffs make much of the fact that the federal scheme requires notice when there is a "termination, suspension, or reduction" in benefits, while the D.C. Code requires notice when there is an action intended to "discontinue, withhold, terminate, suspend, reduce assistance, or make assistance subject to additional conditions." According to plaintiffs, these additional terms mean that local law requires notice in a wider range of scenarios than federal law requires, and they specifically argue that a point-of-sale prescription denial constitutes a decision to "withhold" benefits. Pls.' Opp'n to Defs.' Updated Mot. to Dismiss at 40–41. I disagree. Whether or not the inclusion of the additional terms expands the universe of situations in which notice is required, it cannot logically reach a point-of-sale prescription denial. Such an interpretation would swallow the statutory scheme and render its distinctions meaningless. Under the local scheme, an opportunity for a hearing is required whenever a "claim for assistance is . . . denied," but notice must only be provided in a more limited subset of instances. The point-of-sale prescription denial is the archetypal example of a "claim for assistance. . . being denied" and nothing more; if the statute were read to require notice in this situation, then D.C.'s hearing/notice distinction would totally evaporate and written notice would always be required. Furthermore, the D.C. Code requires timely notice to be postmarked 15 days before an intended action becomes effective, D.C. Code § 4-205.55, further reinforcing the statute to require DHCF to provide written notice to defendants whenever it denied a single prescription at a pharmacy.

the Director are "redundant and an inefficient use of judicial resources," and I exercise my discretion to dismiss them from this case.   *See Cooke-Seals v. D.C.*, 973 F. Supp. 184, 187 (D.D.C. 1997); *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 79 (D.D.C. 2009).

## IV.   Plaintiffs' Cursory Request for Leave to Amend

In their opposition, plaintiffs ask the Court to grant them leave to amend their complaint if "any deficiencies are found in the complaint."   Pls.' Opp'n. to Mot. to Dismiss at 45.   Plaintiffs have failed to comply with the rules of this District, which require a party to file a motion to amend the complaint and attach a proposed amended complaint.   LCvR 15.1.   As our Circuit has explained, "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)."   *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130–31 (D.C. Cir. 2012) (quotation omitted). Plaintiffs did not attach a proposed amended complaint, nor do they suggest how amendment would fix the Amended Complaint's deficiencies.   I therefore deny their cursory request.

## CONCLUSION

Thus, for all of the foregoing reasons, the Court DENIES in part and GRANTS in part defendants' Updated Motion to Dismiss.   A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge