

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**FILED**

DEC 16 2019

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| **ELSA MALDONADO, *et al.*,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Civil Case No. 10-1511 (RJL)** |
| ) | |
| **THE DISTRICT OF COLUMBIA,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

December *16*, 2019 [# 114]

On September 7, 2010, Medicaid recipients brought this suit against the District of

Columbia ("the District"), alleging the District failed to provide them due process when

denying Medicaid coverage for certain prescription medications. *See* Compl. [Dkt. # 3].

After two amended complaints, four motions to dismiss, and two appeals to the D.C.

Circuit, plaintiffs filed a motion for a preliminary injunction on September 24, 2019, nine

years after initiating this lawsuit. *See* Pls.' Mem. in Support of Mot. for a Prelim.

Injunction ("Pls.' Mot.") [Dkt. # 114-1]. They seek a preliminary injunction compelling

the District to provide individualized notice to persons denied Medicaid coverage for those

prescriptions within sixty days. *Id.* at 2. The District moved to stay briefing on plaintiffs'

motion, which I denied on October 10, 2019. I ordered the parties to complete briefing on

plaintiffs' motion by October 23, 2019, and I held oral argument on November 1, 2019.

Upon consideration of the parties' briefing and argument, the relevant law, the entire

1

record, and for the reasons stated below, plaintiffs' motion for a preliminary injunction is **DENIED**.

## BACKGROUND

### I.  Factual Background

The underlying facts of this case have been set forth at great length in prior opinions of this Court and our Circuit Court, and I will not belabor them again here. *See N.B. v. Dist. of Columbia*, 800 F. Supp. 2d 51, 53–54 (D.D.C. 2011); *N.B. ex rel. Peacock v. Dist. of Columbia*, 682 F.3d 77, 80–81 (D.C. Cir. 2012); *N.B. v. Dist. of Columbia*, 34 F. Supp. 3d 146, 148–50 (D.D.C. 2014); *N.B ex rel. Peacock v. Dist. of Columbia*, 794 F.3d 31, 35–37 (D.C. Cir. 2015); *N.B. v. District of Columbia*, 244 F. Supp. 3d 176, 177–79 (D.D.C. 2017). As relevant to plaintiffs' pending motion, the District's Department of Health Care Finance ("DHCF") administers D.C.'s Medicaid program. Second Am. Compl. ("Compl.") ¶ 17 [Dkt. # 98]. Plaintiffs in this case receive Medicaid benefits in the District, including prescription drug benefits. *Id.* ¶¶ 5-8, 10. They allege that their prescription coverage has been denied on various occasions, and the District failed to provide "timely and adequate individualized written notice" of the reason for the denial. *Id.* ¶¶ 2-3.

In support of their motion for preliminary injunctive relief, plaintiffs point to specific issues they have had in filling prescriptions. Plaintiff Elsa Maldonado reports that she attempted to refill her asthma medication at a District pharmacy in 2013, but the pharmacy told her that Medicaid did not cover the kind she had been prescribed. Pls.' Mot., Ex. 13 9/25/18 Maldonado Aff. ¶ 14 [Dkt. # 114-15]. She was thus given a substitute medication for her asthma. *Id.* Maldonado contacted plaintiffs' counsel as well as her

2

doctor to obtain an override of the pharmacy's decision. *Id.* ¶¶ 17, 18. She did not take the substitute medication. *See id.* ¶ 19. After her prescribed medication ran out, she sought treatment from an asthma specialist, who provided her with a temporary supply of the prescribed medication. *Id.*

Plaintiff BR, a severely disabled child, was prescribed antibiotics for strep throat in March 2018. Pls.' Mot., Ex. 12 8/8/18 Robertson Aff. ¶¶ 3, 11 [Dkt. # 114-14]. Two District pharmacies told BR's parents that her prescription could not be filled because BR's Medicaid identification information was incorrect and she was not active in the system. *Id.* ¶¶ 14, 16, 19-20. Eventually, BR's mother spoke to a representative at BR's Medicaid managed care organization, who informed her that BR had been issued a new prescription identification number at the start of the year. *Id.* ¶ 24. BR sometimes refuses to eat or drink when she has a sore throat and, due to the several hours of delay in filling her prescription, she became dehydrated and was taken to the emergency room. *Id.* ¶¶ 12, 27.

## II. Procedural History

The procedural history of this case runs long. Plaintiffs filed suit in 2010. *See* Compl. In 2011, I granted defendants' motion to dismiss, concluding plaintiffs lacked Article III standing to assert their claims. *N.B. v. Dist. of Columbia*, 800 F. Supp. 2d 51, 58 (D.D.C. 2011). Our Circuit Court reversed in 2012. *N.B. ex rel. Peacock v. Dist. of Columbia*, 682 F.3d 77, 86 (D.C. Cir. 2012). Plaintiffs amended their complaint on remand, and the District again moved to dismiss. Am. Compl. [Dkt. # 43]; Mot. to Dismiss Am. Compl. [Dkt. # 46]. In 2014, I concluded that plaintiffs failed to state claims under Title XIX or the Fifth Amendment and that I lacked pendent jurisdiction over their D.C.

3

law claims. *N.B. v. Dist. of Columbia*, 34 F. Supp. 3d 146, 156, 160 (D.D.C. 2014).

Plaintiffs appealed, and our Circuit affirmed dismissal of the Title XIX claim but reversed

and remanded plaintiffs' Fifth Amendment claim. *NB ex rel. Peacock v. Dist. of Columbia*,

794 F.3d 31, 40-44 (D.C. Cir. 2015). On remand, I denied the District's third motion to

dismiss, holding that plaintiffs stated a claim that they were not provided constitutionally

adequate notice of the reasons for the denial of their prescription claims. *N.B. v. District

of Columbia*, 244 F. Supp. 3d 176, 183 (D.D.C. 2017).

Eighteen months after my ruling, plaintiffs moved to amend their complaint and to

certify a class. *See* Mot. to Amend [Dkt. # 79]; Mot. to Certify Class [Dkt. # 80]. One

month later, plaintiffs filed a motion for summary judgment and a permanent injunction or,

in the alternative, a preliminary injunction. Mot. for Summ. J. [Dkt. # 85]. On April 4,

2019, I granted plaintiffs' motion for leave to file a second amended complaint, and the

District moved to partially dismiss on May 31, 2019. Partial Mot. to Dismiss [Dkt # 102].

Plaintiffs opposed and cross moved for partial summary judgment. Pls.' Mem. in Opp. to

Partial Mot. to Dismiss [Dkt. # 104]; Pls.' Cross Mot. for Summ. J. [Dkt. # 105]. Those

motions became fully briefed on August 2, 2019. On September 24, 2019, plaintiffs filed

the instant motion for preliminary injunctive relief. *See* Pls.' Mot.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded

upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res.

Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). Plaintiffs "seeking a

preliminary injunction must establish [1] that [they are] likely to succeed on the merits, [2]

that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [their] favor, and [4] that an injunction is in the public interest." *Id.* at 20. Although these factors "interrelate on a sliding scale, the movant must, at a minimum, demonstrate that irreparable injury is *likely* in the absence of an injunction." *Bill Barrett Corp. v. U.S. Dep't of Interior*, 601 F. Supp. 2d 331, 334–35 (D.D.C. 2009) (internal quotation marks and citations omitted). "A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." *Chaplaincy of Full Gospel Churches (CFCG) v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

## ANALYSIS

### I.    Irreparable Harm

Plaintiffs must—at a minimum—demonstrate irreparable harm, and I accordingly address that factor at the outset. *Winter*, 555 U.S. at 22. Our Circuit "has set a high standard for irreparable injury." *CFGC*, 454 F.3d at 297. *First*, the injury "must be both certain and great; it must be actual and not theoretical." *Id.* (internal quotation marks omitted). In other words, the "moving party must show [t]he injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (internal quotation marks omitted). *Second*, "the injury must be beyond remediation," and "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation[,] weighs heavily against a claim of irreparable harm." *Id.* at 297–98 (internal quotation marks omitted). The alleged harm must be "more than simply irretrievable; it must also be serious in terms

5

of its effect on the plaintiff." *Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the U.S.*, 840 F. Supp. 2d 327, 334 (D.D.C. 2012) (internal quotation marks omitted).

As an initial matter, plaintiffs' extensive delay in seeking a preliminary injunction weighs heavily against a finding of irreparable harm. *See Newdow v. Bush*, 355 F. Supp. 2d 265, 292 (D.D.C. 2005) ("An unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm"); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975) (concluding delay of 44 days in seeking an injunction was "inexcusable"); *Mylan Pharms. v. Shalala*, 81 F. Supp. 2d 30, 44 (D.D.C. 2000) (delay of two months "militates against a finding of irreparable harm"). Plaintiffs initiated this lawsuit nine years ago, and there is no dispute that they were aware then that the District did not provide the type of individualized notice that plaintiffs allege is required. *See* 11/1/19 Prelim. Injunction Hearing Transcript ("Tr.") at 11:16 (acknowledging the "harm has not changed"); *id.* at 12:7-10.[1]

Plaintiffs counter that their delay is excusable, but unfortunately none of their arguments is persuasive. They first contend that the seven-year period from September 2010 to March 2017 should not count against them because the District filed multiple

---

[1] The one precedential case on which Plaintiffs rely is not to the contrary. *See* Reply in Support of Mot. for Prelim. Injunction ("Reply") at 17 [Dkt. # 118] (citing *Gordon v. Holder*, 632 F.3d 722 (D.C. Cir. 2011)). In that case, the D.C. Circuit concluded the district court erred in denying a preliminary injunction because the plaintiff filed suit the day before the statute that allegedly caused him harm went into effect. *Id.* at 723, 24. Significantly, the court noted that the motion was not untimely: plaintiff sought to enjoin the statute before it could legally be enforced. *Id.* at 724. That is a far cry from the circumstances here, where, according to plaintiffs, the District has been engaging in unconstitutional conduct for over nine years. *Gordon* at most stands for the proposition that delay does not *require* denial of a motion for a preliminary injunction, *id.* at 724-25, and it thus does not foreclose consideration of plaintiffs' substantial delay here.

6

motions to dismiss, which were twice granted and appealed. *See* Reply at 18 n.6. According to plaintiffs, it was thus not clear that they had an overwhelming likelihood of success on the merits until I denied the District's third motion to dismiss in March 2017. *See id.*; Tr. at 8:12-20. But even if briefing on dispositive motions and appeals to our Circuit Court amounted to excusable delay, plaintiffs *still* refrained from requesting the extraordinary remedy they now seek for nearly two and a half years *after* my March 2017 ruling.

Undaunted, plaintiffs also attempt to minimize this lengthy period of delay. They contend that the delay between March 2017 until July 2019 is excusable because the parties were engaged in settlement discussions for thirteen months and, after those discussions were unsuccessful, plaintiffs needed five additional months to prepare their motion for summary judgment and permanent injunction, which they filed in November 2018. Reply at 18. They also seem to suggest that their November 2018 motion—which sought preliminary injunctive relief *in the alternative*—effectively tolled any delay in filing their instant motion for a preliminary injunction. *See id.*; Mot. for Summ. J. I ultimately denied plaintiffs' 2018 summary judgment motion without prejudice on July 24, 2019. *See* 7/24/19 Minute Order.[2] Thus, in plaintiffs' view, the only delay that could be counted against them is the two-month period between my denial of their motion for summary

---

[2] Plaintiffs had amended their complaint one month before moving for summary judgment, which prompted the District to file yet another motion to dismiss and all but assured the summary judgment motion would be stale by the time it was litigated. Mot. to Amend; Partial Mot. to Dismiss.

judgment on July 24, 2019, and their filing of the instant motion for a preliminary injunction on September 24, 2019.

Unfortunately for plaintiffs, that assertion does not withstand scrutiny. Although plaintiffs moved in the alternative for preliminary injunctive relief in 2018, they displayed no urgency in pursuing it. Plaintiffs did not request a preliminary injunction hearing (as required by Local Rule) at the time they filed their motion for summary judgment, nor did they do so at any time in the eight months that followed. *See generally* Pls.' Mot.; LCvR 65.1(d) ("On request of the moving party together with a statement of facts which make expedition essential, a hearing on an application for preliminary injunction shall be set by the Court no later than 21 days after its filing."). And five months later, when I granted plaintiffs leave to amend their complaint, *see* 4/4/19 Minute Order, they again seemed content to litigate their case on a routine timetable. Tellingly, plaintiffs proposed a briefing schedule to govern their pending motions that failed to demonstrate any sense of urgency: It provided the District thirty days to oppose plaintiffs' summary judgment motion, and it further allowed plaintiffs thirty days to reply. Proposed Briefing Schedule [Dkt. #97], Ex. A at 2. Five months later, plaintiffs filed the instant motion. *See* Pls.' Mot. Simply put, this is not conduct that bespeaks irreparable harm.[3] *Pub. Citizen Health Research Grp. v. Acosta*, 363 F. Supp. 3d 1, 22 (D.D.C. 2018) (concluding no irreparable harm where

---

[3] The record also contains other delays that are inconsistent with the sense of urgency required for the extraordinary remedy plaintiffs seek here. For instance, after the case was remanded from the D.C. Circuit in 2012, plaintiffs moved for a scheduling order on their motion for class certification, which I denied on December 10, 2012. *See* 12/10/12 Minute Order. Following my order, plaintiffs took no action in this case for *seven months*—until they filed a motion to amend their complaint in June 2013. *See* Mot. to Amend Compl. [Dkt. # 42].

plaintiffs waited over three months after learning that a government agency had taken the complained-of action and over six weeks after filing their complaint to seek preliminary relief). To be clear: I do not fault plaintiffs for pursuing any particular litigation strategy, nor is there anything wrong with plaintiffs proposing reasonable timeframes for briefing. But, all of that said, plaintiffs' past litigation positions "strongly discredit[] Plaintiffs' claim that they are suffering irreparable harm." *Id.*

Apart from their extended delay, plaintiffs otherwise fail to demonstrate irreparable harm. They primarily rely on cases in which courts enjoined the defendants' termination of coverage or treatment entirely. Pls.' Mot. at 11–13. That is not the injury plaintiffs assert here, nor is the actual provision of prescription coverage the relief they seek. *See* Compl. ¶¶ 1–3; Pls.' Mot. at 2; Reply at 14. To the contrary, they allege here that pharmacies are failing to provide them adequate notice as to why a particular prescription was denied, and they seek an order compelling the District to provide that notice. *See* Pls.' Mot. at 1-2. Indeed, I said as much in my last opinion in this case, which plaintiffs have not appealed: "[P]laintiffs are not facing the *total termination* of their benefits under a particular program," nor are they "prohibit[ed] . . . from obtaining the prescription." *N.B. v. Dist. of Columbia*, 244 F. Supp. 3d at 184 (emphasis added). Plaintiffs remain free to challenge a denial (albeit with less information than plaintiffs think required). And, in the case of potential emergencies, the District is required, by its own regulations, to provide a

temporary three-day supply of medication. *See id.* at 183; District Mem. in Opp'n to Mot. for Prelim. Injunction at 9 [Dkt. # 116]; Pls.' Mot. at 2 n.5.[4]

Plaintiffs rely in particular on this Court's prior opinion in *Minney v. U.S. Office of Pers. Mgmt. ("OPM")*, 130 F. Supp. 3d 225, 235 (D.D.C. 2015), in which I concluded the plaintiff's harm was irreparable. *See* Pls.' Mot. at 12–13; Reply at 15. But the claims in that case stemmed from OPM's failure to provide adequate notice to the plaintiff, a blind veteran, that his federal benefits, including medical coverage, would *terminate* completely if his earnings exceeded a certain amount. *Minney*, 130 F. Supp. 3d at 229–30, 235. When OPM terminated his benefits, he successfully moved for a preliminary injunction. *Id.* at 230. To say the least, that case does not control here. Plaintiffs do not face the complete and total termination of their Medicaid coverage, and they remain able to submit prescriptions, challenge any denials, and receive temporary supplies of denied prescriptions.

## II.    Balance of the Equities and Public Interest

Because I conclude there is no likelihood of irreparable harm, preliminary injunctive relief is unwarranted, and I need not address the remaining factors. *See Acosta*, 363 F. Supp. 3d at 23; *GEO Specialty Chems., Inc. v. Husisian*, 923 F. Supp. 2d 143, 147 (D.D.C. 2013). I note, however, that the "balance of the equities" and "public interest" factors,

---

[4] Plaintiffs assert that despite this requirement, "very few" Medicaid beneficiaries receive the three-day emergency supply. Pls.' Mot. at 2 n.5. In support, they cite the District's response to their FOIA request, which states that between June 2018 and February 2019, "21 prescriptions were provided temporary supply for 3 days after being denied for lack of prior authorization." Pls.' Mot., Ex. 2 at 4 [Dkt. # 114-4]. That representation reveals nothing, however, about how many individuals *sought* the emergency supply and were *denied* it.

which "merge when the Government is the opposing party," *Nken v. Holder*, 556 U.S. 418, 435 (2009), further weigh against the issuance of a preliminary injunction here. In evaluating the equities, I must "balance the competing claims of injury and . . . consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks omitted). "When the issuance of a preliminary injunction, while preventing harm to one party, causes injury to the other, this factor does not weigh in favor of granting preliminary injunctive relief." *ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 53 (D.D.C. 2014). Here, plaintiffs do not seek to simply enjoin the District from acting in a certain way or preserve the status quo pending the outcome of litigation. *See Cobell v. Kempthorne*, 455 F.3d 301, 314 (D.C. Cir. 2006). Rather, they seek to obligate the District to provide individualized notice to individuals denied Medicaid coverage, a costly enterprise that would no doubt impose *significant* financial and administrative burdens on the District. Indeed, plaintiffs' proposed relief would require the District to implement that program within sixty days of any order by this Court, which amounts to a mandate that the District disburse funds it does not have in its current budget. *See* 11/4/19 Ltr from C. Risher.

Plaintiffs' response on the balance-of-the-equities factor is unavailing. They argue that because the District has undertaken a pilot program in which certain pharmacies did provide individualized notice, the District is capable of implementing the scheme long-term. Pls.' Mot. at 17-18. That may be so, but it certainly does not follow that the balance-of-the-equities tips in plaintiffs' favor. The District will still face significant financial

burdens if they are ordered to implement a full-scale individualized-notice program within sixty days, even if they are in theory capable of doing so.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for a preliminary injunction is **DENIED**. A separate order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge