UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANTONIO MORGAN, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Case No. 10-1511 (RJL) |
| ) | |
| DISTRICT OF COLUMBIA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**
August 7, 2025 [Dkt. #212]

This case involves a putative class of D.C. Medicaid recipients ("plaintiffs") suing the District of Columbia (the "District" or "defendant") for allegedly violating their Due Process rights. *See generally* Third Am. Compl. ("TAC") [Dkt. #226]. Plaintiffs challenge the District's policy and practice "of failing to provide individualized written notice to persons who present a prescription to a Medicaid-participating provider in the District of Columbia but who are denied Medicaid coverage for the prescription as written." *Id.* ¶ 1. Now before the Court is plaintiffs' motion for class certification. For the reasons set forth below, I will **GRANT** plaintiffs' motion and certify the class.

**I.   BACKGROUND**

A.   Statutory and Regulatory Background

The structure of the District's Medicaid program has been outlined in prior opinions in this case, but I will briefly revisit it here. Medicaid "is a 'cooperative federal-state program that provides federal funding for state medical services to the poor.'" *N.B. v.*

*District of Columbia*, 794 F.3d 31, 35 (D.C. Cir. 2015) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 433 (2004)). The District participates in Medicaid and offers prescription drug coverage under its Medicaid program. *See id.* The Department of Health Care Finance ("DHCF") is the District's single state agency designated to administer its Medicaid program. *See id.*; *see also* 42 U.S.C. § 1396a(a)(5); D.C. Code § 7-771.07.

D.C. Medicaid beneficiaries are enrolled in one of five plans: the District-run Fee-for-Service ("FFS") plan or one of four contractor-run Managed Care Plans ("MCPs"). *See* 29 D.C.M.R. § 5501.1; TAC ¶¶ 23–24; Def.'s Opp'n at 1, 3. The District and the MCPs contract with pharmacy benefits managers ("PBMs") "to process prescription drug claims under Medicaid" for their respective Medicaid plans. *See N.B.*, 794 F.3d at 36; TAC ¶ 24; Def.'s Opp'n at 3–4. Each PBM's claim management system informs the pharmacist whether an individual's claim is covered or denied, *see* TAC ¶ 24; Def.'s Opp'n at 3–4, but DHCF is ultimately responsible "for determining eligibility for all individuals applying for or receiving benefits" under the District's Medicaid program, *see* 42 C.F.R. § 431.10(b)(3).

B.   Case History

Plaintiffs filed suit in 2010, bringing claims under the Due Process clause and D.C. law. *See generally* Compl. [Dkt. #3]. All that remains now is their Due Process claim, pursuant to which they allege that the District's Medicaid program has denied coverage of their prescriptions without providing written notice of the reasons for denial. *See generally* TAC. This, according to plaintiffs, violates Due Process because plaintiffs "have a protected interest in the Medicaid benefits" and the District "has deprived [them] of Medicaid benefits without complying with the due process standards." *Id.* ¶¶ 133–34.

2

Plaintiffs believe that this is a widespread problem and therefore challenge the District's "policies, procedures, and practices of failing to provide individualized written notice." *Id.* ¶ 1. They seek both declaratory and injunctive relief. *Id.* at p. 32–33.

During the pendency of this case, the District updated its Medicaid notice requirements. In 2020 and 2023, it issued two Transmittals requiring pharmacy staff to provide Medicaid beneficiaries with written notice when their claims for prescription drug coverage are denied. *See* DHCF Transmittal No. 20-01 (Jan. 10, 2020) ("Transmittal No. 20-01") [Dkt. #130-3]; DHCF Transmittal No. 23-23 (May 18, 2023) ("Transmittal No. 23-23") [Dkt. #172-1]. The notice forms state the reason for denial and provide information about challenging the denial. Transmittal No. 20-01; Transmittal No. 23-23.

On September 27, 2024, plaintiffs filed the instant motion to certify a class pursuant to Federal Rule of Civil Procedure 23. Third Renewed Mot. for Class Cert. ("Pls.' Mot.") [Dkt. #212]; Pls.' Mem. of P. & A. in Supp. of Pls.' Mot. ("Pls.' Mem.") [Dkt. #212-1]. The District opposes class certification. Def.'s Opp'n to Pls.' Mot. ("Def.'s Opp'n") [Dkt. #217]. The motion is now ripe for my review. *See* Pls.' Reply in Supp. of Pls.' Mot. ("Pls.' Reply") [Dkt. #220]; Def.'s Surreply to Pls.' Mot. ("Def.'s Surreply") [Dkt. #223]; Pls.' Sur-surreply Br. in Supp. of Pls.' Mot. ("Pls.' Sur-surreply") [Dkt. #227].

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 23 sets out the requirements for class certification. First, the proponent of the class must establish that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims

3

or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Second, if the requirements of Rule 23(a) are satisfied, the proposed class must also meet one of the three additional requirements set forth in Rule 23(b). *See In re White*, 64 F.4th 302, 303–04 (D.C. Cir. 2023). As relevant here, Rule 23(b)(2) permits certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, an order certifying a class must appoint class counsel, after consideration of counsel's ability to fairly and adequately represent the class. Fed. R. Civ. P. 23(g)(1).

## III. ANALYSIS

Plaintiffs assert that "[t]his case is well-suited" for class certification because "[t]he 'aim' of this lawsuit is 'to rectify the District's systemic failure to comply' with its constitutional duty 'to all class members[.]'" Pls.' Reply at 1 (quoting *D.L. v. District of Columbia*, 302 F.R.D. 1, 16 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017)). To that end, plaintiffs propose the following class:

> All persons who have applied for, received, or are receiving DC Medicaid who present a prescription to a Medicaid-participating provider for a medication that is not completely excluded from coverage under the DC Medicaid program and who do not, or will not, receive timely and adequate individualized written notice when Medicaid coverage is denied for the prescription as written.

Pls.' Mem. at 2.

The District argues that this proposed class does not meet Rule 23's requirements "because [plaintiffs'] allegations amount to nothing more than scattered, irregular failures

4

by third- and fourth-party pharmacies in the District of Columbia and Maryland to comply with the District's policy requiring those pharmacies to provide individualized written notice . . . ." Def.'s Opp'n at 13. I find that plaintiffs have met Rule 23's requirements and, as such, I will certify their proposed class.

    A.    <u>Rule 23(a)'s Requirements</u>

        i.    *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Impracticability of joinder means only that it is difficult or inconvenient to join all class members, not that it is impossible to do so." *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 76 (D.D.C. 2015). Considerations include the size of the class, the class members' financial resources and ability to bring individual suits, and the need to join future class members. *See D.L.*, 302 F.R.D. at 11.

A proposed class of at least forty members generally satisfies numerosity. *See Bynum v. District of Columbia*, 214 F.R.D. 27, 32–33 (D.D.C. 2003); *Lightfoot v. District of Columbia*, 246 F.R.D. 326, 335 (D.D.C. 2007). "A plaintiff need not provide the exact number of potential class members to satisfy the requirement, so long as there is a reasonable basis for the estimate provided." *Lightfoot*, 246 F.R.D. at 335. Here, plaintiffs assert that "the class size is large, numbering in the thousands." Pls.' Mem. at 3. Though the District submits that this number "is purely speculative," Def.'s Opp'n at 13, data supports a class size much larger than forty members.

Even if I consider only D.C. Medicaid beneficiaries enrolled in FFS—who comprise *less than 13%* of all D.C. Medicaid enrollees, *see* Pls.' Mot. Ex. 8 [Dkt. #212-9]— plaintiffs' estimate is patently reasonable. Between January 2020 and August 2023, over 76,000 D.C. Medicaid FFS beneficiaries sought, but were denied, Medicaid coverage for prescription drugs. *See* Pls.' Mem. Ex. 10 [Dkt. #212-11]; Pls.' Mem. at 4. To establish that at least 1,000 of those approximately 76,000 individuals meet the class definition, plaintiffs would need to show that roughly 1.3% of them did not receive individualized written notice of the reason why coverage was denied. This hurdle is easily cleared.

Two datapoints support plaintiffs' claim that the failure to provide notice is widespread. *See* Pls.' Reply at 3. First, "[p]laintiffs surveyed sixteen pharmacies and discovered that thirteen, spread across all eight wards, were failing to comply with the transmittal memorandum" requiring written notice. *Id.* (quoting *Maldonado v. District of Columbia*, 61 F.4th 1004, 1007 (D.C. Cir. 2023)).[1] Second, "the District produced preliminary results of an audit" which "show that, for a sample of 30 prescription denials from six pharmacies in the [FFS] program in or around September-October 2024, the pharmacies could produce *no* records that a single Medicaid applicant or beneficiary was provided with the required Notice." *Id.* at 4 (emphasis added) (citing Pls.' Reply Ex. 14, DHCF Pharmacy Preliminary Audit Report [Dkt. #220-4]); *see also* Pls.' Reply Ex. 15, Tr. of Dep. of Charlene Fairfax (Nov. 1, 2024) [Dkt. #220-5] at 176:16-178:21, 179:19-181:14

---

[1] Our Circuit has described this survey as unrebutted "evidence that pharmacies are in fact failing to provide notice." *See Maldonado*, 61 F.4th at 1007; *see also id.* ("[U]ncontested evidence demonstrates that, notwithstanding the transmittal memorandum, some number of plaintiffs are still not receiving the information they claim they are entitled to under the Due Process Clause.").

(testifying that these preliminary audit results "[s]how[] that various pharmacies had Medicaid posters up and none of them could produce a copy of the benefit notice for those particular prescriptions that were requested").[2]

Taken together, thirteen of sixteen sampled pharmacies—approximately 81%—and five of five audited pharmacies—100%—failed to comply with the notice requirements. It is thus reasonable to infer that *at least* 1.3% of the FFS beneficiaries denied coverage did not receive notice. While the survey and preliminary audit provide merely sample data, the Court can make "common sense assumptions" based on that data. *See Civic Ass'n of the Deaf of N.Y. City, Inc. v. Giuliani*, 915 F. Supp. 622, 632 (S.D.N.Y. 1996) (quoting *In re Data Access Sys. Secs. Litig.*, 103 F.R.D. 130, 137 (D.N.J. 1984)); *see also Hinton v. District of Columbia*, 567 F. Supp. 3d 30, 52 (D.D.C. 2021) ("[A] plaintiff must support its assertions as to the number of class members with an evidentiary basis from which the Court may then 'draw reasonable inferences from the facts presented to find the requisite numerosity.'" (quoting *Coleman*, 306 F.R.D. at 76)). Here, common sense supports plaintiffs' estimate of a class size in the thousands.

Other factors support numerosity as well. The putative class consists of Medicaid recipients who likely have limited financial resources and cannot feasibly bring individual lawsuits. *See* TAC ¶ 14; *N.B.*, 794 F.3d at 35. Additionally, plaintiffs seek prospective relief for future class members whose identities are currently unknown and therefore

---

[2] The District argues that the preliminary audit results are too narrow to support numerosity, as they reflect the results of only one PBM's "first attempt to audit pharmacies for compliance with the Notice Program." Def.'s Surreply at 4. However, the preliminary audit occurred in fall 2024—over a year after the 2023 Transmittal issued—and, when considered alongside plaintiffs' survey, provides a "reasonable basis" for the conclusion that at least some pharmacies are not providing notice. *See Lightfoot*, 246 F.R.D. at 335.

cannot be joined. *See* TAC ¶ 12 & p. 32; *see also J.D. v. Azar*, 925 F.3d 1291, 1322 (D.C. Cir. 2019) ("[C]lasses including future claimants generally meet the numerosity requirement due to the 'impracticality of counting such class members, much less joining them.'" (citation omitted)).

Plaintiffs plausibly estimate a class size in the thousands, comprised of low income individuals with limited ability to bring separate suits and including potential future claimants. They have therefore established numerosity.

   ii.  *Commonality*

Rule 23(a)(2) requires plaintiffs to prove that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). They must demonstrate that the class members "have suffered the same injury" and that their claims turn on a "common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011).

According to plaintiffs, the common question in this case is "whether the District fails to provide individualized written notice to Medicaid beneficiaries who are denied coverage for their prescribed medications." Pls.' Mem. at 6. The District argues that this question is not sufficiently common because "[p]laintiffs fail to identify a policy or custom uniting the class's claims[.]" Def.'s Opp'n at 16. Unfortunately for the District, the plaintiffs have the better argument here.

Plaintiffs have established a common injury across the class: the District's failure to provide each class member with individualized written notice, in violation of their Due

8

Process rights. TAC ¶¶ 12–13, 126. It is not enough, though, for the plaintiffs to allege "that they have all suffered a violation of the same provision of law." *See Wal-Mart*, 564 U.S. at 350. They must bridge the gap between the violation of each plaintiff's Due Process rights and the existence of a class with allegations of "a uniform policy or practice that affects all class members." *See D.L.*, 302 F.R.D. at 12 (quoting *D.L. v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013)). Here, they do so by alleging that the District's "actions and inactions amount to ongoing policy, pattern, practice, and/or custom that violate plaintiffs' rights under the Due Process Clause." TAC ¶ 131; *see also id.* ¶¶ 40, 126, 134. Proving the existence of such a policy "will resolve an issue that is central to the validity of each [plaintiff's] claims in one stroke." *See Wal-Mart*, 564 U.S. at 350.[3]

The District disputes commonality by pointing to potential factual differences among the class members' claims, such as the reason why each pharmacist may have failed to provide notice; how each MCP, PBM, or pharmacy is implementing or failing to implement the District's Transmittals; and whether each plaintiff received some other form of notice. *See* Def.'s Opp'n at 16–18. These attempts to fragment the class are unavailing.

*First*, because plaintiffs' Due Process claims do not turn on the reasons for the violations of their rights, it does not matter why a given pharmacist failed to provide notice. The District is correct that the putative class "includes all individuals who fail to receive

---

[3] The District contends that it has a policy *to* provide written notice, set out in its 2020 and 2023 Transmittals. Def.'s Opp'n at 16 n.5. Plaintiffs acknowledge the District's "attempt[s] to reform its policies to comply with federal law," but maintain that their allegations strike at the District's continued failure to comply with their legal obligations to provide written notice. *See* Pls.' Reply at 13 n.7. Thus plaintiffs' allegations are about "the actual failure to provide notice," regardless of the existence of the Transmittals which purport to require notice. *See Maldonado*, 61 F.4th at 1006–07.

9

notice for any reason," even if the failure was because "the pharmacist [could not] find a pen" or because the pharmacist was "particularly busy." *Id.* at 16–17. This does not, however, defeat commonality.

Our Circuit rejected a similar argument in *D.L. v. District of Columbia*, a case involving allegations that the District "was violating the 'Child Find' requirement of the Individuals with Disabilities Education Act [("IDEA")] by failing to provide special education to . . . preschoolers with disabilities." 860 F.3d 713, 717 (D.C. Cir. 2017). Our Circuit affirmed certification of multiple sub-classes of disabled children even though the school system may have denied each class member special education benefits for different reasons, such as "insufficient outreach," "insufficient staff," or "documentation errors." *See id.* at 725. Because liability under the IDEA did "not depend on the reason for" the District's failure to follow IDEA's requirements, the plaintiffs did not need to "show why their rights were denied to establish that they were" denied. *Id.*[4] The *D.L.* plaintiffs had shown that their rights were denied across the board, and as such, regardless of the reason for those denials, they had met the commonality requirement. *See id.* at 724–25.

---

[4] Our Circuit distinguished the case before it from the Supreme Court's decision in *Wal-Mart*, which reversed certification of a class of 1.5 million female Wal-Mart employees suing Wal-Mart under Title VII for sex discrimination. *See generally Wal-Mart*, 546 U.S. 338. The *Wal-Mart* plaintiffs failed to establish commonality because, even though all class members allegedly suffered violations of the same provision of law—Title VII—that law "can be violated in many different ways--by intentional discrimination or by hiring and promotion criteria that result in disparate impact, and by the use of these practices on the part of many different superiors in a single company." *Id.* at 350. The *Wal-Mart* plaintiffs "wish[ed] to sue about literally millions of employment decisions at once," and "[w]ithout some glue holding the alleged *reasons* for all those decisions together," examination of the claims for relief could not "produce a common answer to the crucial question *why was I disfavored*." *Id.* at 352. In *D.L.*, our Circuit found that "*Wal-Mart*'s analysis of commonality in the Title VII context" had "limited relevance," as "[u]nlike Title VII liability, IDEA liability does not depend on the reason for" the violation. *See* 860 F.3d at 725. Such is true here as well, as Due Process liability does not depend on the reason for the violation.

*D.L.*'s reasoning applies here as well. Plaintiffs allege class-wide Due Process violations based on the District's failure to provide individualized written notice when their prescription drug claims were denied. *See* TAC ¶¶ 12–13, 126. For each plaintiff, the Due Process violation occurred when he or she did not receive written notice. Plaintiffs do not need to show the reasons why they did not receive written notice, just that they did not in fact receive such notice. *See D.L.*, 860 F.3d at 725. It is therefore sufficient under *D.L.* for plaintiffs to set forth as their common injury Due Process violations stemming from a District policy or practice of not providing individualized written notice.

*Second*, contrary to the District's assertion, I do not need to evaluate how each MCP, PBM, and pharmacy is implementing the District's notice policy to determine whether the District should be liable for any given violation. *See* Def.'s Opp'n at 17. Medicaid's statutory and regulatory framework mandates that DHCF—the District's designated agency for administering its Medicaid program—is legally responsible for Medicaid claims processing and eligibly determinations. *See* 42 C.F.R. § 431.10(b)(3); 42 U.S.C. § 1396a(a)(5). DHCF "may not delegate . . . the authority to supervise the plan or to develop or issue policies, rules, and regulations on program matters." 42 C.F.R. § 431.10(e). Regardless of which PBM denied coverage or which pharmacy a plaintiff visited, each plaintiff's claim is traceable to DHCF's alleged policy or practice of failing to provide notice. *See N.B. ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 86 (D.C. Cir. 2012) (finding that a named plaintiff had standing because "the alleged procedural injury . . . is directly traceable to DHCF's failure to establish policies and procedures for providing the required notices when prescription coverage is denied at the point of sale"); *see N.B.*, 794

11

F.3d at 43 (explaining that state action occurred when a PBM denied coverage because the PBM acted as DHCF's agent).

*Third*, the District asserts that commonality fails because "on various occasions, . . . [p]laintiffs received actual notice of the reason for the denial." Def.'s Opp'n at 17–18. The District points to a few instances in which named plaintiffs received oral notice of the reasons for denial and claims that if the Court finds oral notice sufficient, "then any commonality among the class is destroyed." *Id.* The Court has already concluded that some written notice is required to satisfy Due Process, so that dog won't hunt! *See N.B. v. District of Columbia*, 244 F. Supp. 3d 176, 182–83 (D.D.C. 2017).

Plaintiffs have thus established a common question—"whether the District fails to provide individualized written notice to Medicaid beneficiaries who are denied coverage for their prescribed medications," Pls.' Mem. at 6—and a District policy or practice tying each plaintiff's claims together. The final question, then, is whether this common injury is susceptible to common proof. *See Brown v. District of Columbia*, 928 F.3d 1070, 1080 (D.C. Cir. 2019). Plaintiffs intend to use "numerical evidence" to "show[] that the District is in fact failing to provide Medicaid applicants and beneficiaries with . . . notice." Pls.' Reply at 14. This type of numerical and statistical evidence is appropriate for establishing "a systemic failure" like the one alleged here. *See D.L.*, 860 F.3d at 730.

### iii.    *Typicality*

Rule 23(a)(3)'s typicality requirement is met when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "While commonality requires a showing that the *members* of the class suffered

12

an injury resulting from the defendant's conduct, the typicality requirement focuses on whether the *representatives* of the class suffered a similar injury from the same course of conduct." *Bynum*, 214 F.R.D. at 34. "[T]ypicality is satisfied when the plaintiffs' claims arise from the same course of conduct, series or events, or legal theories of other class members." *Hoyte v. District of Columbia*, 325 F.R.D. 485, 490 (D.D.C. 2017).

The five named plaintiffs are all D.C. residents and Medicaid beneficiaries. Decl. of Andrea Morgan ("Morgan Decl.") [Dkt. #212-5] ¶¶ 3–4, 6–7; Decl. of Nikia Bowden ("Bowden Decl.") [Dkt. #212-6] ¶¶ 3–5; Decl. of Cheri Mallory ("Mallory Decl.") [Dkt. #212-7] ¶¶ 2–4; Decl. of Chioma Oruh ("Oruh Decl.") [Dkt. #212-8] ¶¶ 2–4. They suffer from disabilities which require treatment with prescription medications, and they use D.C. Medicaid to cover those prescriptions. Morgan Decl. ¶¶ 4–5, 7, 9; Bowden Decl. ¶¶ 3–4, 8; Mallory Decl. ¶¶ 4–5, 8; Oruh Decl. ¶¶ 3, 5. Each named plaintiff's parent or caregiver has been denied Medicaid coverage for the plaintiff's prescriptions without receiving written notice of the reasons for denial. Morgan Decl. ¶¶ 10, 14, 16–29, 23; Bowden Decl. ¶¶ 10, 12, 15–16, 18, 21; Mallory Decl. ¶¶ 3–5; Oruh Decl. ¶¶ 9, 11, 13–14.

The named plaintiffs assert that their legal claims and the "course of conduct" giving rise to those claims are identical to those of the class. Pls.' Mem. at 9. The District violated the named plaintiffs' Due Process rights when each of them (1) "went to a Medicaid-participating pharmacy to pick up prescribed medication"; (2) "were denied Medicaid coverage for the prescribed medication at the pharmacy point-of-sale"; and (3) "were not provided with individualized written notice setting forth the fact that the prescription was

13

denied, the reason for the denial, or their appeal rights." *Id.* These allegations are typical of the class-wide claims.[5]

### iv.   *Adequacy of Representation*

Federal Rule of Civil Procedure 23(a)(4) requires plaintiffs to demonstrate that "the representative parties will fairly and adequately protect the interests of the class." The adequacy of representation is typically measured by two criteria: "1) the named representative[s] must not have antagonistic or conflicting interests with the unnamed members of the class, and 2) the representative[s] must appear able to vigorously prosecute the interests of the class through qualified counsel." *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (quoting *Nat'l Ass'n of Reg'l Med. Programs, Inc. v. Mathews*, 551 F.2d 340, 345 (D.C. Cir. 1976)).

The named plaintiffs meet both criteria. There is no evidence they have antagonistic or conflicted interests with the rest of the class. The District does not point to any such evidence, and the named plaintiffs do not seek individual relief or damages which could create conflicts of interest. The named plaintiffs' parents and caregivers have affirmed that

---

[5] In challenging typicality, the District reasserts its arguments against commonality—namely, that factual differences regarding which MCPs the plaintiffs are enrolled in and which pharmacies plaintiffs went to defeat typicality. Unfortunately for the District, these arguments are also unpersuasive here. First, DHCF is singularly responsible for D.C. Medicaid eligibility and claims processing, regardless of which MCP or FFS provides each plaintiff's plan. *See supra* III.A.ii. For all plaintiffs—including named plaintiffs—the alleged policy of failing to provide written notice is legally attributable to DHCF. *See id.* Second, the Court need not analyze the reason why a given pharmacy did not provide notice to a plaintiff to find a Due Process violation. *See id.* If a named plaintiff establishes that he or she did not receive notice, his or her Due Process claim is typical of those of other class members who also did not receive notice. "[F]actual variations between the claims of class representatives and the claims of other class members . . . do not negate typicality," *see Bynum*, 214 F.R.D. at 34, and here the District's pettifogging about factual differences fails when the heart of each named plaintiff's injury is materially identical to the class-wide injury.

they understand the responsibilities of being class representatives and are willing to protect the interests of the class. *See* Morgan Decl. ¶ 26; Bowden Decl. ¶ 23; Mallory Decl. ¶ 15; Oruh Decl. ¶ 16. Additionally, plaintiffs' counsel appear capable of vigorously prosecuting the case; they filed this case in 2010 and have pursued it through multiple appeals. Pls.' Mem. at 10. Therefore, the adequacy requirement is met.[6]

B.  Rule 23(b)(2)'s Requirements

Having found that Rule 23(a)'s requirements are satisfied, I must now determine whether certification is appropriate under Rule 23(b)(2). This rule requires that: (1) "the party opposing the class has acted or refused to act on grounds that apply generally to the class," and (2) "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted . . . .'" *See Wal-Mart*, 564 U.S. at 360 (citation omitted). Essentially, it must be the case that "a single injunction or declaratory judgment would provide relief to each member of the class." *Id*.

Plaintiffs allege that "the District has acted or refused to act (via its policies, procedures, and practices) to perform a legal duty (i.e., provide due process) on grounds generally applicable to all class members (i.e., when they are denied Medicaid coverage

---

[6] "[S]ome courts have imposed an 'implied' fifth requirement that the class be adequately defined and clearly ascertainable[,]" *Hoyte*, 325 F.R.D. at 489, but our Circuit recently rejected such implied class certification requirements and mandated that courts "apply the terms of Rule 23 as written," *see In re White*, 64 F.4th at 314. To the extent there is such a requirement, plaintiffs have met it. "All that is required for a class to be ascertainable is that 'an individual would be able to determine, simply by reading the [class] definition, whether he or she [is] a member of the proposed class.'" *Hinton*, 567 F. Supp. 3d at 51 (quoting *Coleman*, 306 F.R.D. at 75). Here, individuals—and the Court—can ascertain whether they are members of the class based on objective facts about their health care coverage and their experiences at the pharmacy.

15

for prescribed medication).") Pls.' Mem. at 12; *see also* TAC ¶¶ 1, 40, 131–35. To remedy this refusal to act, they seek declaratory and injunctive relief on behalf of the entire class. *See* TAC at 32. A single injunction would provide relief to each class member, as it would enjoin the allegedly unlawful policy of failing to provide individualized written notice.

The District argues that Rule 23(b)(2) certification is improper because plaintiffs' requested injunction simply orders the District "to comply with the Due Process Clause," which violates Rule 65(d)(1)'s requirement that an injunction "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." *See* Def.'s Opp'n at 23–25; Fed. R. Civ. P. 65(d)(1). However, Rule 65(d)(1) governs orders granting injunctions, not requests for injunctive relief in complaints. The Third Amended Complaint's requested injunctive relief is broad, but the class is sufficiently cohesive that the Court can fashion an injunction which provides the relief sought and complies with Rule 65(d). A single injunction could, for example, require the District to modify its existing notice policy, regularly collect copies of the notice forms to monitor compliance, and reach certain measurable benchmarks; this would provide relief to "the class as a whole." *See* Fed. R. Civ. P. 23(b)(2); *see also D.L.*, 860 F.3d at 727. As such, I find that certification is appropriate pursuant to Rule 23(b)(2).

C.   Class Counsel

The final question before me is whether plaintiffs' counsel—attorneys with Terris, Pavlik & Millian, LLP and the National Health Law Program—are qualified to be class counsel. Here, the Court must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class

16

actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1).

Plaintiffs' counsel filed this suit in 2010 and have spent significant time and effort advancing those claims throughout this case's long history. *See* Seventh Decl. of Kathleen Millian ("Millian Decl.") [Dkt. #212-2] ¶¶ 1, 13. They have handled class actions and other complex litigation, including cases involving Medicaid beneficiaries, and are thus likely knowledgeable about the relevant law. *See* Pls.' Mem. at 15; Millian Decl. ¶¶ 8–11; Third Decl. of Michael L. Huang ("Huang Decl.") [Dkt. #212-3] ¶¶ 7–9; Fourth Decl. of Jane Perkins ("Perkins Decl.") [Dkt. #212-4] ¶¶ 2, 8–10. Finally, they represented that they "will continue to commit the resources necessary to vigorously prosecute this case on behalf of the class." *See* Pls.' Mem. at 15–16; Millian Decl. ¶ 13; Huang Decl. ¶ 2; Perkins Decl. ¶ 4. Accordingly, I find plaintiffs' counsel easily meets Rule 23(g)(1)'s requirements and will appoint them as class counsel.

## IV. CONCLUSION

Plaintiffs' proposed class meets the requirements of Rule 23. I will therefore **GRANT** plaintiffs' motion for class certification and appoint plaintiffs' counsel as class counsel. An Order consistent with the above accompanies this Opinion.

*[signature]*
RICHARD J. LEON
United States District Judge